## The People ex rel. the Secretary of State v. the State Insurance Company.

*Mandamus: When awarded.* When a statute imposes a specific duty, either in express terms or by a fair and reasonable implication ; and there is no other specific and adequate remedy, the writ of mandamus may be awarded to compel the performance of the duty.

*Corporations: Examination of Insurance Companies: Legislative power.* It is within the power of the Legislature to provide for an examination into the

affairs of insurance companies, doing business in this State; and this examination may be enforced by mandamus.

An Insurance Company incorporated under the laws of this State, and allowed by act No. 136, of the laws of 1869, until the 31st day of January, 1870, to conform to the provisions of that act, may be required to submit to the examination authorized by that act, before that time.

*Constitutional law : Title of legislative acts.* Provisions for the examination by proper State officers into the affairs of insurance companies, and prescribing penalties for false representations on such examination, even if made applicable to existing companies, are properly comprehended within the title of an act entitled "an act relative to the organization and powers of fire and marine insurance companies transacting business within this State"—within the meaning of § 20 of article IV of the Constitution. *People v. Mahaney, 13 Mich.,' 495.*

*Heard October 27. Decided October 28.*

Mandamus:

Oliver L. Spaulding, Secretary of State, makes application for a writ of mandamus, to compel the State Insurance Company to submit their affairs to an examination, as provided by § 26 of the act relative to the organization and powers of fire and marine insurance companies transacting business within the State, approved April 3, 1869. *Laws of 1869 p. 230.*

*Dwight May,* Attorney General, for the relator.

*A. Pond,* for defendants.

COOLEY CH. J.

The present is an application on behalf of the Secretary of State to compel the defendants to submit to such an examination of their books and affairs as is contemplated by Section twenty-six of "an act relative to the organization and powers of fires and marine insurance Companies transacting business within this State." Laws of 1869 Vol. 1 p. 230. The defendants resist the application on the grounds :

1. That mandamus is not a proper remedy for such a case, but that the State, if they refuse to comply with any

provision of their charter or with any statutory regulation, must proceed by *quo warranto* or by indictment.

2. That the application is premature, inasmuch as the defendants were in existence as a corporation under a prior law when the act above mentioned was passed, and by the thirty-fifth Section of that act were allowed until the first day of January, 1870, to conform to its provisions. They cannot therefore, it is argued, be compelled to do or submit to any thing under that act until the time thus allowed them has fully elapsed.

3. That although the Legislature, under its complete power to amend laws of incorporation, may legislate such corporations out of existence, unless they will comply with new provisions, yet it has no power to compel the defendants against their will to continue in existence under, or to accept the provisions of a new law, and if it had, the title of the act in question does not indicate that such was the intention.

To determine upon the validity of these objections, it is important to examine a little the purpose of the act of 1869, that we may be enabled to discover what it was precisely which the Legislature undertook to accomplish by it. The general purpose of the act may be stated to be, to regulate the business of fire and marine insurance within the State, whether carried on by corporations existing in virtue of organizations under its laws, or by foreign corporations, associations or partnerships. To accomplish this general purpose it provides for the organization of corporations within the State, points out their powers and duties, and the powers and duties of their officers, and makes a great many regulations designed for the protection of policy holders, against the imprudent or dishonest action of officers or agents. While it leaves unimpaired the corporate entities previously created in the State for the transaction of this business, it limits a time within which they shall make

their organization conform to the new act; the design being that at the end of that time all corporations existing under the laws of the State for the purpose specified, shall possess uniformity in their leading features, and stand upon the same footing as regards powers, capacities, duties, obligations and liabilities, except so far as the act itself creates differences, dependent upon the differences in the kinds of business to be transacted by them; whether fire, or marine, mutual or otherwise. It also, for the like purpose of protection to policy holders, establishes various regulations in regard to foreign insurance companies, associations or partnerships, a compliance with which is the condition upon which they are to be suffered to transact business within the State.

Among the most important provisions which the act makes towards the accomplishment of its general purpose, is that for the inspection of the books and affairs of any company doing business within the State, and incorporated under its laws. For this purpose Section twenty-six provides that the Secretary of State may appoint one or more persons not officers of any fire insurance company, doing business within this State to make the necessary examination; and the statute makes it the duty of the officers or agents of any such company to cause their books to be opened for the inspection of the person or persons so appointed, and otherwise to facilitate such examination so far as it may be in their power to do. Further provisions are then made for winding up the affairs of the company by legal proceedings if it shall prove of doubtful solvency; and for its entire dissolution.

Now, it is obvious, that to make the protection to the policy holders which was contemplated by the section here referred to efficacious, the Secretary of State must have some expeditious mode of enforcing compliance against un-

willing officers, and that if he is left to the slow process of *quo warranto* or criminal prosecution, the whole purpose of this Section may be defeated. Insurance Companies and other financial institutions differ from most other corporations in the general interest the public have in knowing precisely what their pecuniary condition and responsibility is from day to day; and while the law has made ample provision for periodical reports, it has also wisely empowered the proper public officer to demand an examination at any time, without previous notice, and without affording the officers of the corporation an opportunity to prepare deceptive appearances. Such opportunity will be afforded in every case if the examination can be resisted, and the security which this section of the statute was designed to give, will be of little avail except so far as a refusal to submit to examination may subject a corporation to suspicion and thus put the public upon its guard.

We understand the general rule to be, that where a statute imposes a specific duty, either in express terms or by fair and reasonable implication, and there is no other specific and adequate remedy, the writ of mandamus may be awarded to compel performance of the duty. And in such a case it is no sufficient objection that the corporation upon which the duty is imposed, is liable to indictment for neglect to perform it.—*People v. Mayor etc. of New York*, 10 *Wend.*, 395 ; *The King v. The Severn and Wye Railway*, 2 *B. and Ald. 646.* This must be so on general principles, unless, as is said by Abbott Ch. J. in the case last cited, the remedy by indictment is "equally convenient, beneficial and effectual."

In the present case no prosecutions, either of the Company or of officers can speedily and beneficially afford to the policy holders the desired protection, and there can be no sufficient reason, therefore, why this remedy should not be resorted to, in order to compel a compliance with the

law. This being our view, we think the first objection not well taken.

The second objection we think equally untenable. We do not understand the act of 1869 to be inapplicable to the previously existing companies, before the thirty-first day of January next, or that it allows them until that time to accept its provisions. The act, on the contrary, applies to them immediately; and the time allowed by Section thirty-five is only given for the purpose of enabling them to make such changes in their own organization, or in their rules, regulations, modes of business &c. as would be needful to put themselves into entire conformity with the new law. For that purpose it might be found necessary to change their articles of association; but in the mean time they are not exempt from any proper inspection or examination, or from other provisions of the act which are equally applicable and equally important whatever the law under which the company was formed, and whatever their pre-existing regulations.

Nor do we think the third objection a valid one. It was entirely competent, we apprehend, for the Legislature to establish this regulation for the examination of existing companies by a separate act if they had seen fit to do so. It was equally competent to do it by the general act under which the old companies were required to re-organize. Indeed there was a manifest propriety in having the regulations concerning this business all embodied in a single statute; and we can conceive of no legal obstacle if the regulations are in themselves unobjectionable, and there is no difficulty in matter of form with the enactment.

Section twenty-six above referred to establishes a new but very reasonable regulation of the business of insurance; and upon what grounds the existing companies can legally or reasonably claim exemption from it, we do not perceive. We do not think the power of the Legislature is limited to taking away the corporate powers of defend-

ants, if they refuse to submit to the inspection; that would be an extreme remedy, while the one resorted to, takes away no vested right, detracts in no degree from corporations' powers, capacities or privileges, but is a measure of proper precaution to prevent the corporation inflicting injury upon others. It appears to us that a railroad company, owning buildings within an incorporated city, might as " reasonably claim exemption from the visits of the fire wardens, because the law providing for their inspection was passed after the company had perfected its organization.

It is suggested, however, that the title of the act in question will not include section thirty-six if made applicable to pre-existing corporations. The title is—" an act relative to the organization and powers of fire and marine insurance companies transacting business within this State." This title is quite comprehensive, and was intended, as we have already said, to extend to all insurers of property against fire and marine risks, whose business was protected by our laws, whether existing in this State or abroad. The title aptly indicates that intent. Is a provision for inspection by a proper state officer, foreign to the object expressed in the title? We think not. We must give the constitutional provision a reasonable construction and effect. The constitution requires no law to embrace more than one object, which shall be expressed in its title. Now the object may be very comprehensive and still be without objection, and the one before us is of that character. But it is by no means essential that every end and means necessary or convenient for the accomplishment of the general object, should be either referred to or necessarily indicated by the title. All that can reasonably be required is, that the title shall not be made to cover legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection. — *Indiana Central R. R. Co., v. Potts,* 7 *Ind.,*

THE PEOPLE *v.* THE STATE INSURANCE CO.

*681; People v. Mahaney 13 Mich., 495.* Now a proper examination by the State authorities was evidently regarded by the Legislature as a very suitable means to render the organization of insurance companies useful to the public, and to prevent their powers being perverted to wrongful purposes; and therefore, we think, is not foreign to the title of this act. The writ must issue as prayed.

The other Justices concurred.