EDWARD BREITUNG v. BENJAMIN LINDAUER AND OTHERS.

*Directors' Liability for Corporation Debts under Comp. L., §2858—
Payment by Note—Exemptions—Repeals.*

A note given for a debt is not payment unless so agreed; its date therefore does not necessarily fix that of the debt.

A Michigan statute required annual reports of the condition of certain corporations to be filed (Comp. L., § 2840) and provided that if the directors "intentionally neglect" to file them, they shall be liable for all debts of the corporation contracted during the period of neglect (Id., § 2858). *Held* (*a*) that the statute cannot be construed as though the word "intentionally" was omitted; (*b*) that directors were not primarily liable under it; (*c*) that the liability imposed was in the nature of a penalty, sustained no contract obligation upon which creditors could rely, and if not put in judgment, could not be enforced after the repeal of the clause imposing it, even if incurred before. [The liability clause was afterwards dropped. Pub. L. 1875, Act 89.]

The State can increase exemptions and make them applicable to contracts previously entered into.

Repeals by implication are not favored.

An amendment operates as a repeal so far as it is repugnant to the original act; and if not repugnant in express terms, it still effects a repeal if it covers the whole subject of the amended act and contains new provisions showing that it was meant as a substitute.

Error to Marquette.  Submitted June 19–20.  Decided October 2.

ASSUMPSIT under Comp. L., § 2858.  The facts are in the opinion.

*W. P. Healy, G. V. N. Lothrop* and *Ball & Owen* for plaintiff in error, as to the history of the legislation involved, referred to Comp. L. 1857, § 1803, amended in Sess. L., 1867, Act 89, and Sess. L. 1869, Act 70: see Comp. L. 1871, § 2840; also Comp. L. 1857, § 1819, amended in Sess. L. 1865, Act 21; and Comp. L. 1857, §

1821, amended in Sess. L. 1875, Act 89. A legislative revision of a subject, operative in itself, repeals all former legislation on it, even though consistent with it. *Bartlet v. King*, 12 Mass., 545; *Ellis v. Paige*, 1 Pick, 45; *United States v. Tynen*, 11 Wall., 92, and cases; *Flaherty v. Thomas*, 12 Allen, 434; *Com. v. Kelliher*, 12 Allen, 481; *Norris v. Crocker*, 13 How., 438; *Leighton v. Walker*, 9 N. H., 59; *Com. v. Kimball*, 21 Pick., 376; *Nichols v. Squire*, 5 Pick., 168; *Titcomb v. Union Ins. Co.*, 8 Mass., 326. The repeal of a penalty stops any right of action for it, even if the liability is already incurred. *Engle v. Shurts*, 1 Mich., 150; *R. R. Co. v. Austin*, 21 Mich., 390, 411; *Thurston v. Prentiss*, 1 Mich., 201; *Butler v. Palmer*, 1 Hill, 324; *State v. B. & O. R. R. Co.*, 12 Gill. & J., 399; *Morris & Essex R. R. Co. v. Com'r of Railroads*, 37 N. J. L., 228. The statutory liability imposed by Comp. L., § 2858, is in the nature of a penalty. *Van Etten v. Eaton*, 19 Mich., 194–5; *First Nat. Bank v. Price*, 33 Md., 487; *Garrison v. Howe*, 17 N. Y., 458; *Boughton v. Otis*, 21 N. Y., 261; *Merchants' Bank v. Bliss*, 35 N. Y., 412; *Miller v. White*, 50 N. Y., 139; *Bird v. Hayden*, 1 Robertson, 391; *Bronson v. Dimock*, 4 Hun, 614; *Peele v. Phillips*, 8 Allen, 89; *Halsey v. McLean* 12 Allen, 441; *Lawler v. Burt*, 7 Ohio St., 340; *Cable v. McCune*, 26 Mo., 380; *Union Iron Co. v. Pierce*, 4 Biss., 327; *Hill v. Frazier*, 22 Penn. St., 320; *Judy, etc., v. Howard*, 2 Met. (Ky.), 44; *Derrickson v. Smith*, 3 Dutch., 166. And after a statute is repealed, no action founded on it can be maintained. *Merchants' Bank v. Stevenson*, 10 Gray, 232; *Wiley v. Yale*, 1 Metc., 553. One who has taken a note in place of his original demand, and having elected to sue upon the note, has recovered judgment, is bound by his election. *Galloway v. Holmes*, 1 Doug. (Mich.), 347; *Thompson v. Howard*, 31 Mich., 309; *Wetmore v. McDougall*, 32 Mich., 276; *Shepard v. Cross*, 33 Mich., 96; *Rodermund v. Clark*, 46 N. Y., 354; *Smith v. Baker*, 8 L. R. (C. P.), 355; *Castleman v. Holmes*, 4 J. J. Marsh. (Ky.), 1. Indebtedness is merged in the judgment. *Bangs*

*v. Watson*, 9 Gray, 212; *Handrahan v. Cheshire Iron Works*, 4 Allen, 396.

*Wm. H. Parks, Geo. W. Hayden* and *Mitchel & Pratt* for defendants in error. The joint and several liability of directors for debts contracted by their corporation during the period of their neglect to file reports is not a penal, but a contract liability which they must be considered to have assumed voluntarily, *Lockhart v. Van Alstyne*, 31 Mich., 76; it is on the same footing as the liability of stockholders for corporation debts, which is one of contract, *Hawthorne v. Calef*, 2 Wall., 10, and the directors are therefore principals and co-debtors with the corporation. *Conant v. Van. Schaick*, 24 Barb., 96; *Harger v. McCullough*, 2 Den., 119; *Corning v. McCullough*, 1 Comst., 47; *'Moss v. McCullough*, 7 Barb., 295. The constitutional prohibition against impairing the obligation of contracts covers implied contracts, *Fletcher v. Peck*, 6 Cr., 133; *Planters' Bank v. Sharp*, 6 How., 301; *Dartmouth College Case*, 4 Wheat., 518; *Ogden v. Saunders*, 12 Id., 213–341; a change in the statute cannot affect a vested right of action for the recovery of money paid for liquor sold in violation of the liquor law, *Peters v. Goulden*, 27 Mich., 171, and the right to recover actual damages for the neglect of railroad companies to fence their roads is secure from legislative attack. *Bay City & E. Sag. R. R. Co. v. Austin*, 21 Mich., 390. The Legislature can create implied contracts from the future voluntary acts of individuals, *Streubel v. Mil. & Miss., R. R.*, 12 Wis., 67. And the directors' liability, as one of the securities to the corporate indebtedness, cannot be impaired, *Bronson v. Kinzie*, 1 How., 311; nor can an implied obligation of indemnity, *Boyle v. Zacharie*, 6 Pet., 635. A penal liability is illustrated in *Maryland v. B. & O. R. R. Co.*, 3 How., 534. But when a penal statute is also meant to give security or compensation to creditors, the right it establishes rests on equitable principles and cannot be taken away, *Dash v. Van Kleeck*, 7 Johns., 477. The repeal of § 2858 takes away both the right and the remedy. *Curran v. Arkansas*, 15 How., 304. The New York decisions relied

on by plaintiff in error must have regarded the statutes under which they were rendered as unlike ours, *Rochester v. Barnes*, 26 Barb., 657, and it does not follow that because the liability may be treated as penal for the purpose of the New York statute of limitations, it is entirely devoid of substantial rights and may be abrogated at will, *McCoun v. N. Y. C. & H. R. R. R. Co.*, 7 Lans., 75; *Bonnell v. Wheeler*, 1 Hun, 332. The liability sought to be enforced against the directors in this case is not based upon a judgment, but upon the original debt of the corporation, for which they are made liable, *Bohn v. Brown*, 33 Mich., 257; *Deming v. Puleston*, 55 N. Y., 655; *Parrott v. Colby*, 6 Hun, 55.

MARSTON, J.    This action was brought to charge the defendant, plaintiff in error, for an indebtedness of the Michigan Iron Company, contracted while the defendant was a director thereof, because the directors of such corporation had failed to file certain reports as required by a general law of the State, relating to mining and manufacturing corporations.

A brief statement of facts will better enable us to comprehend the several questions raised in this case.

During the years 1873 and 1874 the corporation purchased from Lindauer, Levy & Co., and their successors, Lindauer Bros. & Co. of Chicago, certain goods, and the same not having been paid for, the corporation, June 10th, 1874, executed and delivered to plaintiffs its three notes, each for the sum of $1,202.85, payable in 30, 60 and 90 days respectively, leaving a balance at that date still unprovided for. August 3d, 1874, the corporation purchased another bill of goods amounting to $127.50, and on the 12th day of August it gave another note for this new bill and the amount of the old bills not included in the three notes previously given. This last note was given for the sum of $1,322.44, and was dated June 4th, 1874.    Upon the same day, August 12th, two of the first three notes were taken up, and a new note for the amount thereof given.    Each note drew ten per cent. interest.

The defendant, Breitung, was a stockholder and attended and presided over the annual meeting of the stockholders of the corporation in 1872. He was also present at the annual meeting held July 29th, 1874, but it did not appear that he attended either the stockholders' or directors' meetings intermediate those dates. It also appears that he was elected a director at the annual meeting held in June 1872, and held the position of director, having been regularly elected a director again in 1873 and 1874, until July 29th, 1874. The directors failed to make and file a report as required by section five of chapter 25 of the Compiled Laws, during the years 1872 or 1873, and until July 29th, 1874, when a report was filed. All this appears from the finding of the court. The court also found that "the only excuses bearing upon the causes of the neglect aforesaid, to file the reports required by section five, are those given by a majority of the directors in their testimony, which were that they did not think of it; that they had no active intention to violate the law; that the general management was left with the secretary and treasurer, H. J. Colwell, and the directors usually interfered only when the general manager asked their advice. The same excuses were given in the testimony of this defendant for his neglect. The court in its finding farther says, "I find that the directors did forget to file the reports mentioned, and also find that the subject of filing these reports during the time of the neglect mentioned did not occur to the majority of the directors, including this defendant." Also "I find that forgetfulness of duty or an impression that another will discharge a duty which the law devolves on both alike, or a quiescent reserved intent to do nothing wrong, will not excuse from an active incumbent duty." And again, "I find that under the statute the neglect or refusal was an intentional one." Of course, these last are conclusions of law from the facts previously found, and are not finding of facts, although so called. The court also came to the conclusion that the company's promissory notes having been given for the merchandise, and judgments afterwards obtained upon such notes against the company, and no explanatory evi-

dence having been introduced with reference thereto, it must therefore be considered that the notes paid for the merchandise, and that the indebtedness was contracted when the notes were given, and upon this view excluded the note of August 12th given for $2,431.29 but allowed the others, except the amount of $127.50 for goods purchased in August, which was excluded. We are of opinion that the court erred in excluding the note given August 12th for $2,431.29, to take up the two notes of June 10th, 1874, which were given for goods previously purchased. The general and well settled rule in this State is, that acceptance of the note of the debtor is not a payment, unless so agreed to by the parties, of the indebtedness existing and for which the note may be given, and there is nothing in the finding of the court to make this case an exception. As the case now stands it is not important to pursue this subject, or to determine what effect, if any, an extension of the time, by the delivery and acceptance of a note, would have in an action brought against directors liable at the time the goods were purchased, but who had ceased to be directors at the time the note was given.

We are also of opinion that from the facts found the conclusion arrived at "that under the statute the neglect or refusal was an intentional one," was erroneous. This provision of the statute making directors of a corporation liable where they *intentionally* neglect to make and file a certain report, cannot be construed as though the word "intentionally" was omitted, and yet such in effect was the construction given it by the court below in the conclusion arrived at. In *Van Etten v. Eaton*, 19 Mich., 194, this court held that it was not necessary for Eaton in the first instance to show that the neglect imputed to the directors was intentional, but that in view of the fact that the directors must be presumed to be acquainted with the requirement of their charter to make and file reports of the condition of the company, and in the absence of all explanation or countervailing proof of the omission by the directors to file it, the jury would be warranted in finding that the neglect was intentional. In that case Van Etten, although

guilty of no personal neglect, was under the statute held liable, because of an intentional neglect of a majority of the directors. In this case we are not at liberty to draw any inference, as to the intention of the directors, from the fact that no report was made. The court does not leave this question to be determined upon presumptions arising from the omission to report, but finds the facts to be that the directors had no active intention to violate the law; that they did not think of it; that the subject of filing these reports did not occur to them or to a majority of them, including this defendant. It may be that difficulty will be encountered in showing an intentional neglect, where the directors deny any such intention. Their denial would not be conclusive and the court or jury might be warranted in finding, from the surrounding circumstances, the neglect to have been intentional, even although denied by the directors. The difficulties in this direction, however, more properly pertain to the legislative department.

Another and perhaps more important question remains to be considered.

At the time the debt which this action was brought to recover was contracted, sections five, eighteen and nineteen of chapter ninety-five, relating to mining and manufacturing companies, required certain reports to be made by the corporation in July of each year, to be signed by a majority of the directors, and filed as therein directed; and section twenty-three made the directors of any such company who should intentionally neglect or refuse to comply with the provisions of these sections, jointly and severally liable, in an action founded on the statute, for all the debts of such corporation contracted during the period of such neglect or refusal, and such of them as were present and acting as such directors at any time during such neglect or refusal, were to be deemed guilty of a misdemeanor, and on conviction thereof, subject to fine or imprisonment or both in the discretion of the court. In 1875, which was previous to the commencement of this suit, section twenty-three was amended by striking out the personal liability clause, chang-

ing the fine and imprisonment, and adding a *per diem* penalty during the period of such neglect. The defendant claims that the effect of this amendment leaves the creditors of the corporation without any remedy against the directors; that the liability imposed upon them before the amendment was in the nature of a penalty which they are relieved from by a repeal of the statute. This position is unquestionably correct, and is so conceded by counsel, if the liability was purely penal in its nature, but it is insisted that this section before its repeal, created contract relations between the creditors of ·the corporation and the directors, which the Legislature could not constitutionally disturb, as any attempt to deprive the creditors of this remedy would be to impair the obligation of their contract. The important question presented for consideration is, what was the nature of the liability created by section 23 prior to its amendment?

Counsel for defendants in error, to sustain their view, have forcibly argued that under this section prior to its amendment a civil liability was created against all the directors during the period of neglect, and a criminal liability against those present and participating in the business of the corporation during the same period, the civil liability being for the sole benefit of the creditors of the corporation, and the other intended as a punishment for disobedience of official duty; that the civil liability must be considered as an undertaking on the part of each director to answer and pay the debts incurred during the period of their default; that the directors by accepting such position assent and agree thereby to all the terms and conditions imposed upon them by the act under which the corporation was organized and which constitutes the charter of the company; that parties dealing with the corporation contract on the faith of this personal liability of the directors; that such liability entered into and became a part of the seller's contract and constituted a part of his security; that the directors are therefore principals and co-debtors with the corporation; that in this respect their liability is like that of stockholders who are made individually liable for certain debts of the corporation; that it has been universally held that the lia-

bility of the stockholder is not in the nature of a penalty, and that the same conclusion therefore must be reached in this case.

We think it has been very generally if not universally held, under constitutional and statutory provisions such as exist in this State, making stockholders personally liable, that such liability was not penal in its nature; that the relation created between the stockholder and creditor was a contract relation, and the only real question in dispute in that class of cases was, whether the liability was primary in its nature or not,—whether the stockholder was from the inception of the debt a principal or merely a surety. If therefore we could assume and determine the nature of the liability of .the director in this case to be like that of the stockholder in the class referred to, this whole controversy would be disposed of. We may assume that the directors assent and agree to the terms, conditions and liabilities imposed upon them by the act, but this assumption cannot be carried so far as to prevent the Legislature from relieving them from a portion of their responsibilities, or in assuming that when so relieved they could not thereafter take advantage thereof. They assent to and are bound by the terms of their charter so long as they remain in force. And had there been no repeal in this case no question could have arisen. Was this liability clause in section 23 for the sole benefit of parties dealing with the corporation?

As was said in *Van Etten v. Eaton,* this provision in § 23 making the directors personally liable, must be taken distributively, and be applied according to the nature of the corporation involved in the duty required, as the duties required to be performed by sections 3, 5, 18 and 19 are not all applicable to mining corporations. And in that case Van Etten was held liable because no report was found on file in the clerk's office as required by § 19; and the effect of the omission to comply with section five was not determined.

The report required by section five, until the amendment of that section in 1867, was not required to be placed on file in any public office. The statute required such a report

· 37 MICH.—29.

to be made and was specific as to what it should contain, but a failure to file the same in the clerk's or any other public office, other than the office of the corporation, would not have rendered the directors liable, as no such duty was enjoined upon them. Previous then to 1867 parties about to deal with the corporation, and who desired, from an examination of their report, to ascertain the financial condition of the corporation, had to resort to the office of the company. The report required by section 18 from mining companies, and from manufacturing companies under section 19 would not show the financial condition or the solvency or insolvency of the corporation reporting. Section 18 was applicable only to mining companies and required them in their report to "state the amount of copper, iron or other mineral which such company may have mined within the past year." And § 19, which related only to manufacturing companies, required them in their report to "state the amount of capital actually paid in, and the amount borrowed by such company, and remaining unpaid in whole or in part." Neither of these reports could inform a creditor or person contemplating dealings with the corporation of its financial standing. If the profits of a corporation could be determined from a knowledge alone of the amount of minerals which the company may have mined during any one year, then perhaps such a report would be sufficient, but a knowledge of the profits per ton, or a basis from which such knowledge could be ascertained, we think would be found essential. If without this knowledge a person should from the quantity mined alone undertake to determine the profits, he might afterwards ascertain to his dismay that he was calculating in the wrong direction and that the greater the quantity mined the greater the loss which the corporation sustained. And this is true also of manufacturing corporations. A report showing "the amount of capital actually paid in, and the amount borrowed by such company and remaining unpaid in whole or in part," would be far from giving an intelligent person the information he would desire before determining what credit he could safely extend to the corporation. And yet we have seen that a failure to file one

of these reports, which could not give the information desired, upon which the creditor could not have relied, and whom the omission to file could not therefore have materially injured, rendered the directors liable. *Van Etten v. Eaton*, 19 Mich., 194. These reports required by sections 18 and 19 were not intended to give any such full and complete information; they were designed for another and different purpose; they were to be filed in the office of the clerk of the county in which the business of such corporation was carried on, and a duplicate thereof in the office of the Auditor General. The primary object in view in requiring reports to be made as required by §§ 18 and 19 was for purposes of taxation. Section 19 required all corporations formed for the purpose of mining to pay a specific tax upon each ton of mineral obtained. And manufacturing companies by § 21 were required to pay a specific tax "on the amount of their capital stock paid in, and also money borrowed, which for this purpose shall be considered as capital stock of such corporations." Section 5 required a specific report containing 1. the amount of capital actually paid in; 2. the amount invested in real estate; 3. the amount of personal estate; 4. the amount of their debts and credits as near as may be; and 5. the name of each stockholder, and the number of shares held by him at the date of such report. This report if made and on file in the office of the company would give creditors and others the desired information, and after the amendment of 1867 which required such report to be filed in the office of the Secretary of State, and with the clerk of the county where the mine was situated, there could be no object in requiring another, containing but a part of the information set forth in the report required in section five, to be at the same time made, and filed in the same office for the information of the public generally. But still farther suppose that under the amendment of 1867 the report required by section 5 was made and filed in the Secretary of State's and county clerk's office, and that the report required by § 18, if a mining company, and by § 19, if a manufacturing company, was not filed as therein required. Certainly here

the creditor could obtain all the information he desired.
The other reports if on file could give him no additional
information of any value. How then could the failure, the
neglect or refusal to file them, injure him? Why under
such circumstances should the directors be held personally
liable for their neglect or refusal to comply with §§ 18 and
19? What good reason could a creditor set up for insisting
upon such a liability? There would be but one,—the posi-
tive provision of the statute creating the liability. There
would in such a case be absolutely no equity whatever upon
which the creditor could stand. Indeed this clause in §
23 creating the liability does not proceed upon the theory
of injury sustained by the creditor in consequence of a fail-
ure to report. The liability is the same whether the corpo-
ration is solvent or insolvent at the time the debt is con-
tracted, or at the time it becomes due or the creditor
attempts to collect it. Indeed he is not required in the
first instance to make any effort to collect from the corpo-
ration. He may proceed directly and in the first instance
against the directors, and if they are obliged to pay a lia-
bility created and growing out of their own wrong in an
intentional neglect to perform a duty enjoined upon them
by a public statute, it may certainly admit of very serious
doubt whether they would have any remedy over against the
corporation. It has been held that they would not.

The fact that the creditor of the corporation may, be-
fore the debt was created, have examined and ascertained
that no report was on file, and that he therefore sold the
goods relying upon this statutory liability of the directors,
can not make much if any difference whatever in the con-
struction to be given this statute. If the liability was
limited to the damage or injury sustained by the creditor
in consequence of no report having been made and filed,
there would be some reason for giving prominence to such
a fact. Take the case of a person or firm, in contempla-
tion of doing business with a corporation, making an exami-
nation, and finding no report upon file, selling goods rely-
ing upon the statutory liability of the directors. Suppose
that in such a case after the examination was made, but

before the "debt was contracted" by a completion of the sale, and delivery of the goods when the latter was necessary, a report should be placed on file. Here the creditor would have no remedy against the directors, although the goods were sold and delivered to the corporation in reliance upon this liability. It is only for debts "contracted during the period of such neglect or refusal" that the directors are liable. The reliance of the creditor, therefore, one way or the other,—the fact that he may or may not be injured because of a failure to make and file this report,— the fact that the corporation may be solvent or insolvent, or that the creditor at the time he dealt with the corporation had actual knowledge of the financial condition of the corporation, will not affect the liability created by this statute. Yet these are all important considerations in ascertaining the nature of the liability. Business men generally rely upon their ability to enforce payment of their claims by proceedings at law against their debtors and a sale of their property upon execution, and they very frequently before giving credit, ascertain what property their debtor has liable to seizure and sale upon execution. Yet the right of the State to increase exemptions and make the same applicable to contracts previously entered into is unquestioned; so although the law at the time the contract is entered into permits the creditor to take the body of his debtor in execution, yet the legislature may take away this right, leaving the creditor to pursue his remedy against property alone.

Are directors primarily liable under this statute? I think not. It cannot be claimed that this defendant is individually liable for the amount of plaintiffs' claim against the corporation from any thing contained in the act under which the corporation was organized. Neither his position as a stockholder or as a director, nor both combined, renders him liable, nor does his liability attach as a necessary result of the contract entered into. The debt was one against the corporation only; the relation of debtor and creditor arose and existed between the plaintiffs and the corporation, and the directors are not, nor is the defendant as a director or stockholder, made liable for the debts of the corporation,

either in whole or in part. His liability is imposed by the statute for a violation of its provisions, by the directors or a majority of them intentionally neglecting or refusing to make and file a report as therein directed. It is intended as a punishment for a breach on the part of the officers of their clear statutory duty, and is wholly independent of any injuries which creditors of the corporation may have sustained in consequence of such neglect. This liability depends solely upon the positive provisions of a public statute founded on considerations of public policy, and when in the opinion of the Legislature such considerations cease to exist, the law may be repealed. Such repeal in no way impairs the rights, privileges or franchises of the corporation, nor of the individuals dealing with such corporation. Their rights and remedies against it are in no way affected or impaired; they remain as they were when the contract was entered into, and so long as they have not obtained a judgment against the director they have no such vested right to this remedy against him as would be beyond the power of the Legislature to take away. We are of opinion that this liability must be considered in the nature of a penalty, and that part of the statute having been repealed without any saving clause, such penalty cannot now be recovered. *Engle v. Shurts*, 1 Mich., 150; *Tivey v. People*, 8 Mich., 128; *Derrickson v. Smith*, 3 Dutcher, 166; *Gray v. Coffin et al.*, 9 Cush., 192; *Stebbins v. Edmands*, 12 Gray, 203; *Shaler etc. Co. v. Bliss*, 34 Barb., 309; s. c., 27 N. Y., 297; *Bird v. Hayden*, 1 Robert., 383; *Garrison v. Howe*, 17 N. Y., 458; *Boughton v. Otis*, 21 N. Y., 261; *Corning v. McCullough*, 1 Comst., 47; *Merchants' Bank v. Bliss*, 35 N. Y., 412; *Miller v. White*, 50 N. Y., 139; *Hill v. Frazier*, 22 Pa. St., 320; *Middletown Bank v. Magill*, 5 Conn., 28; *Kritzer v. Woodson*, 19 Mo., 327; *Cable v. McCune*, 26 Mo., 380; *Halsey v. McLean*, 12 Allen, 441; *Bay City, etc., R. R. Co. v. Austin*, 21 Mich., 390; *Gregory v. The German Bank of Denver*, 5 Cent. Law Journal, 196.

There is another class of cases already referred to which have been relied upon but which in our opinion are clearly

distinguishable from cases like the present. *Hawthorne v. Calef*, 2 Wall., 10, may be considered as one of the leading cases of that class. The State of Maine incorporated a railroad company and the charter provided that the shares of the individual stockholders should be liable for the debts of the corporation, if there was a deficiency of corporate assets. The court held that the case came within the prin-. ciple of *Woodruff v. Trapnall*, 10 How., 190, where the charter of the bank provided that the bills and notes of the institution should be received in all payments of debts due the State, and *Curran v. State*, 15 How., 304, where the charter of the bank contained a pledge or assurance that certain funds deposited therein should be devoted to the payment of its debts, and in *Hawthorne v. Calef*, the court by *Nelson, J.*, said ''Now, it is quite clear that the personal liability clause in the charter, in the present case, pledges the liability or guarantee of the stockholders, to the extent of their stock, to the creditors of the company, and to which pledge or guarantee the stockholders, by subscribing for stock and becoming members of it, have assented. They thereby virtually agree to become security to the creditors for the payment of the debts of the company, which have been contracted upon the faith of this liability.''

We should have no hesitation in following the doctrine of these cases if the present was at all like them. These are all cases of contract clearly. Congress solemnly pledged the faith of the United States to the payment in coin or its equivalent of all the obligations of the United States, not bearing interest, known as United States notes, except as otherwise provided by law. Would any doubt but that this pledge was in the nature of a contract? Could it by any possibility be considered penal in its nature? Yet wherein does this pledge differ from that in *Curran v. State?*

Under an act of Congress "national currency" so called is receivable at par in all parts of the United States in payment of all taxes and excises and all other dues to the United States, except duties, etc. No one ever supposed this provision was in the nature of a penalty; it is as clearly an agreement as could possibly be made in such a

manner, yet wherein does it differ from the case of *Woodruff v. Trapnall?* This currency is secured by bonds of the United States deposited with the United States treasurer at Washington. That parties receive this currency upon the faith of this pledge, and that it would be a breach of good faith and of a contract obligation to attempt to appropriate such securities to any other purpose would be disputed by none, yet wherein lies the difference between the pledge in this case of United States bonds, and the pledge in *Curran v. State,* that certain funds deposited in the bank should be devoted to the payment of its debts? And so in the case of *Hawthorne v. Calef* the charter of the corporation pledged the shares of the individual stockholders for the debts of the corporation in case of a deficiency of corporate assets. Each stockholder at once and without any farther or other act of his became liable to this extent. His liability in no way depended upon any act of omission or commission on his part. By becoming a stockholder he assented to this pledge and was bound by it. Not so in this case. There was no pledge that the directors should be personally responsible for the debts of the corporation either in whole or in part, as principals or as sureties. They were required by law to make certain reports, one for the information of the public, another for the purpose of fixing the amount of taxes to be paid by the corporation. And upon a failure in either respect, whether any one was injured in consequence of such failure or not, they were made jointly and severally liable, not for the debts of the corporation after its assets had been exhausted,—not for the debts of the corporation to the amount or value of shares held by them, nor for the damages sustained by persons on account of such failure to report,—but for all the debts of the corporation contracted during the period of such neglect. If the corporation was solvent the creditor was not injured by the neglect; he was not therefore benefited by the remedy so much as would be the stockholders of the corporation by having its debts paid by its delinquent officers. Besides all this the liability was several as well as joint. The report must be made and signed by a majority of the board of

directors. If a majority neglected or refused, the minority who were anxious and willing to report were equally liable civilly with those who were not. Indeed, the liability might be thus created by the wrongful act not of the party himself but of his associates, over whom in this respect he had no control. It surely cannot be said that a liability thus created partakes of the nature of a contract between the creditor of the corporation and the director. If any question can be considered settled by authority, we think this question has, by the courts of the several ¡States, so far as we have been able to discover, uniformly agreeing in holding the liability thus created to be a penalty and not a contract. And we have not been referred to any decision of the Supreme Court of the United States holding a contrary doctrine. The cases referred to in that court are all cases where we should have no hesitation in holding the liability created as partaking of the nature of a contract and protected as such.

Another question discussed might here be referred to. It was insisted that the amendment of section 5 in 1867, which in itself provided a punishment for a failure to comply with its provisions, thereby operated as a repeal by implication of section 23 so far as the latter had provided a penalty for a failure to report as provided in section 5.

In so far as a criminal punishment was concerned this would undoubtedly be so, but as repeals by implication are not favored, we are not satisfied that the amendment of 1867 would have the whole force contended for. The rule is that the latter act operates *to the extent of the repugnancy*, as a repeal of the first, or, if the two acts are not in express terms repugnant, yet if the latter *covers the whole subject of the first*, and contains new provisions showing that it was intended as a substitute, it will operate as a repeal. *U. S. v. Tynen*, 11 Wall., 92. But as this question is not essential to a full disposition of this case at present, we need not fully examine or pass upon it.

We are of opinion that the defendant is not liable and that the judgment must be reversed with costs of both courts. No new trial will be ordered.

The other Justices concurred.