*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN CONCRETE ASSOCIATION,

Plaintiff-Appellant,

v

DEPARTMENT OF TRANSPORTATION,

Defendant-Appellee.

UNPUBLISHED
November 17, 2022

No. 359490
Court of Claims
LC No. 21-000175-MZ

Before: HOOD, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM.

Plaintiff, Michigan Concrete Association, appeals by right the order of the Court of Claims granting summary disposition in favor of defendant Department of Transportation and denying plaintiff's requests for preliminary injunction, declaratory relief, and writ of mandamus. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff is a nonprofit corporation that promotes and supports the interests of the Michigan concrete paving industry and Michigan concrete paving contractors. Of particular interest to plaintiff was the decision of defendant in 2015 to change the method of how it evaluated pavement designs for certain projects. According to plaintiff's complaint, defendant previously used the American Association of State Highway and Transportation Officials-93 (AASHTO-93) pavement design method. In 2015, however, defendant transitioned to a different version of this method. According to plaintiff, the new methodology used by defendant begins with the prior AASHTO-93 equations, and then changes the design by applying a number of variables through use of the Mechanistic Empirical Model Design Program ("New Program"). In its complaint, plaintiff alleged that although the New Program was supposed to result in a uniform system, the variables utilized by defendant failed to account for conditions specific to Michigan. The result, according to plaintiff, is that defendant produces designs that are in conflict with the performance history of existing Michigan pavements.

The New Program, according to plaintiff, violates MCL 247.651h, which states in pertinent part, that defendant has the obligation to:

develop and implement a life-cycle cost analysis for each project for which the estimated total pavement costs exceed $1,500,000.00 funded in whole or in part with state funds. The department shall design and award paving projects utilizing material having the lowest life-cycle cost. All pavement design life shall ensure that state funds are utilized as efficiently as possible. [MCL 247.651h(1).]

In addition, MCL 247.651h(3) states that when assessing "life cycle cost," defendant "shall compare equivalent designs and shall be based upon Michigan's actual historic project maintenance, repair, and resurfacing schedules and costs as recorded by the pavement management system, and shall include estimates of user costs throughout the entire pavement life."

When it became clear to plaintiff that defendant was not going to suspend use of the New Program despite plaintiff's protestations, plaintiff filed a three-count complaint in the Court of Claims. Count I, labeled "INJUNCTIVE RELIEF," alleged that defendant violated MCL 247.651h "by adopting and implementing the New Program and continuing to use it despite knowing it produces results that violate the [statutory] requirement to employ life-cycle analysis that compares equivalent designs." In Count II, plaintiff asked for declaratory relief on the basis of the same statutory violations asserted under Count I. Lastly, in Count III, plaintiff sought a writ of mandamus asking the Court of Claims to compel defendant to comply with MCL 247.651h.

The Court of Claims concluded that plaintiff lacked standing to seek declaratory relief with respect to defendant's compliance with MCL 247.651h, because plaintiff asserted no interest different from that of the public at large, and alternatively, that declaratory relief could not issue because the alleged beneficiaries of the status quo—the state's asphalt pavers—were not before the court. The Court of Claims also concluded that plaintiff was not entitled to mandamus because the action it sought to compel was not ministerial in nature and that plaintiff had no valid cause of action that would support the remedy of injunctive relief. This appeal followed.

## II. MANDAMUS

### A. STANDARD OF REVIEW

This Court reviews a trial court's decision whether to grant mandamus relief for an abuse of discretion. *Berry v Garrett*, 316 Mich App 37, 41; 890 NW2d 882 (2016). The Court reviews de novo, however, questions of law such as whether a defendant has a clear legal duty to perform and whether a plaintiff has a clear legal right to such performance. *Id.* Any attendant issues of statutory interpretation are also reviewed de novo. *Id.*

### B. DISCUSSION

The Court of Claims, quoting MCL 247.651h(1) and (3), concluded that the action that plaintiff sought to compel was not ministerial in nature, explaining that "the execution of MDOT's duties under the statute requires MDOT to exercise a great degree of discretion," including "making judgments and comparing 'equivalent designs,' as well as making assessments about utilizing funds 'as efficiently as possible.' " We agree.

As we explained in *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 518-519; 866 NW2d 817, 829 (2014) (quotation marks and citations omitted):

To obtain the extraordinary remedy of a writ of mandamus, the plaintiff must show that: (1) the plaintiff has a clear, legal right to performance of the specific duty sought, (2) the defendant has a clear legal duty to perform, (3) the act is ministerial, and (4) no other adequate legal or equitable remedy exists that might achieve the same result. In relation to a request for mandamus, a clear, legal right is one clearly founded in, or granted by, law; a right which is inferable as a matter of law from uncontroverted facts regardless of the difficulty of the legal question to be decided.

"A ministerial act is one in which the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Berry*, 316 Mich App at 41(quotation marks and citation omitted).

We must analyze, therefore, the words of the statute to determine whether it affords defendant any discretion or judgment when comparing designs and utilizing funds. MCL 247.651h states:

(1) The department shall develop and implement a life-cycle cost analysis for each project for which the estimated total pavement costs exceed $1,500,000.00 funded in whole or in part with state funds. The department shall design and award paving projects utilizing material having the lowest life-cycle cost. All pavement design life shall ensure that state funds are utilized as efficiently as possible.

(2) As used in this section . . . , "life-cycle cost" means the total of the cost of the initial project plus all anticipated costs for subsequent maintenance, repair, or resurfacing over the life of the pavement.

(3) Except as otherwise provided in this section, life-cycle cost shall compare equivalent designs and shall be based upon Michigan's actual historic project maintenance, repair, and resurfacing schedules and costs as recorded by the pavement management system, and shall include estimates of user costs throughout the entire pavement life.

(4) For pavement projects for which there are no relevant Michigan actual historic project maintenance, repair, and resurfacing schedules and costs as recorded by the pavement management system, the department may use either of the following as a substitute for the requirements listed in subsection (3):

(a) Actual historical and comparable data for reasonably equivalent designs from geographic locations with similar climates, soil structures, or vehicle traffic.

(b) The department may determine appropriate estimated maintenance, repair, and resurfacing schedules for a project by using preliminary results from a demonstration project . . . that is underway at the time of the project. The schedules described in this subdivision shall be determined using appropriate engineering analysis techniques and shall be approved by the chief engineer of the department. The temporary schedules described in this subdivision shall be superseded by actual performance data as it is developed.

Plaintiff averred it was seeking a writ of mandamus in order to "compel MDOT to suspend the use of the New Program until MDOT corrects the material flaws and known calibration defects in the New Program so the New Program produces accurate results that comport with the [statutory] requirement to employ a life-cycle cost analysis that compares equivalent designs in determining pavement designs." Plaintiff asserted that the applicable statute "is ministerial in all material respects because, without limitation, MDOT is tasked with implementing a life-cycle cost analysis that compares equivalent designs." In its complaint, plaintiff set forth MCL 247.651h "in pertinent part," and presented that statute's Subsections (1), (2), and (3), evidently deeming Subsection (4) not pertinent at that time. Plaintiff was thus clearly referencing the procedure in Subsection (3) while petitioning for mandamus.

On appeal, however, plaintiff concedes that MCL 247.651h grants defendant "discretion insofar as its duties to 'ensure that state funds are utilized as efficiently as possible,'" under Subsection (1), and to "compare equivalent designs," under Subsection (3). Plaintiff now asserts that "no relevant Michigan-specific Performance Curves are available" and refers to defendant's "nondiscretionary duties under MCL 247.651h(4)(a) and (b)." Under this provision, plaintiff asserts that defendant "has a clear legal duty to perform one of the two nondiscretionary functions as between MCL 247.651h(4)(a) and (4)(b)." Plaintiff has thus retreated from seeking to compel defendant specifically to implement a life-cycle cost analysis under Subparagraph (3) and has shifted to seeking to compel defendant to choose between the two alternatives in Subsection (4).

In effect, plaintiff has admitted defendant has discretion under MCL 247.651h(1) and (3), defeating its request for mandamus under those parts, and now hopes to revive that request by injecting a new factual predicate in order to compel defendant to proceed in accordance with MCL 247.651h(4). Having asked the Court of Claims for a writ of mandamus in order to "compel MDOT to suspend the use of the New Program until MDOT corrects the material flaws and known calibration defects" under the statutory duty to "employ a life-cycle cost analysis that compares equivalent designs in determining pavement designs," then arguing on appeal that mandamus is proper only to compel defendant to choose among the procedures in MCL 247.651h(4), defendant is not challenging the Court of Claims's decision, but rather is putting forward a new basis for seeking mandamus. Because there was no decision below on whether defendant was obliged to proceed under MCL 247.651h(4), as opposed to Subsection (3), we will not consider this argument on appeal. See *Ficano v Lucas*, 133 Mich App 268, 275; 351 NW2d 198 (1983) (a party "may not shift ground on appeal and come up with new theories . . . after being unsuccessful on the one presented to the trial court") (quotation marks and citation omitted).[1] Accordingly, we affirm the Court of Claims's decision to deny the request for mandamus.

## III. DECLARATORY RELIEF

---

[1] Even if the argument were not waived, we find it unpersuasive. The Court of Claims's conclusions how "the execution of MDOT's duties under the statute requires MDOT to exercise a great degree of discretion," including "making judgments and comparing 'equivalent designs,' as well as making assessments about utilizing funds 'as efficiently as possible'" for purposes of MCL 247.651h(1) and (3) apply equally to defendant's determination whether existing data are sufficient for analysis under Subsection (3) or insufficient and thus requiring recourse to Subsection (4).

-4-

## A. STANDARD OF REVIEW

This Court reviews a trial court's decision whether to grant declaratory relief for an abuse of discretion. *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 550; 904 NW2d 192 (2017). However, whether a party has legal standing to assert a claim presents a question of law we review de novo. *Sterling Heights Pain Mgt, PLC v Farm Bureau Gen Ins Co of Mich*, 335 Mich App 245, 249 n 1; 966 NW2d 456 (2020).

## B. DISCUSSION

The Court of Claims held that any decision it issued with respect to plaintiff's request for declaratory judgment would not "affect what MCA's members do or otherwise shape their actions." In other words, "MCA's members will continue to bid on projects regardless of how MDOT implements the statute and regardless of whether MDOT continues to employ the new program for pavement design." In addition, the Court of Claims concluded that plaintiff did not have an interest in the litigation that was "different in any way from that of the public at large," rejecting plaintiff's argument that it had a unique interest in the case because "[t]he public at large undoubtedly has an interest in the efficient utilization of state funds." Thus, the Court of Claims concluded that plaintiff "has not [pleaded] and proven facts that demonstrate an adverse interest necessitating the sharpening of the issues raised." We agree.

"Every action shall be prosecuted in the name of the real party in interest . . . ." MCL 600.2041. "Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010). "A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant." *Id.*

"In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." MCR 2.605(1). "The existence of an actual controversy is a condition precedent to the invocation of declaratory relief." *Lansing Sch Ed Ass'n v Lansing Bd of Ed (On Remand)*, 293 Mich App 506, 515; 810 NW2d 95 (2011) (quotation marks and citation omitted). "An actual controversy exists when a declaratory judgment is needed to guide a party's future conduct in order to preserve that party's legal rights." *League of Women Voters v Secretary of State*, 506 Mich 561, 586; 957 NW2d 731 (2020).

Plaintiff does not challenge the conclusion that there is no conduct for which its members need guidance, but instead argues that under *Lansing Sch Ed Ass'n (On Remand)*, 293 Mich App at 515-516, it can establish an actual controversy by seeking relief to prevent imminent harm, which plaintiff claims it does in this case by enjoining defendant's purported violation of MCL 247.651h through use of the New Program. In *Lansing Sch Ed Ass'n*, however, this Court reiterated that "[a]n actual controversy exists when declaratory relief is needed to guide a plaintiff's future conduct in order to preserve the plaintiff's legal rights." *Id.* at 515. We explained:

Plaintiffs do not allege imminent injury; the alleged physical injuries have already occurred. They do not seek to prevent a violation of a criminal law, nor is there a contractual issue for which the parties are in need of guidance. Declaratory relief does not appear necessary to guide plaintiffs' future conduct in order to preserve their legal rights. [*Id.* at 516.]

From this passage, it is clear we did not imply that allegations of imminent injury, violation of criminal law, or contract disputes were legitimate bases for declaratory relief wholly apart from whether such relief would guide the plaintiffs' future conduct; this Court instead considered those circumstances as part of the inquiry as to whether the plaintiffs needed such guidance.

Moreover, plaintiff's assertion that it seeks to prevent imminent harm to its members is inapt, because losing out on future bids is not a cognizable legal interest. In *Cedroni Assoc, Inc v Tomblinson, Harburn Assoc, Architects & Planners Inc*, 492 Mich 40, 46; 821 NW2d 1 (2012), the Michigan Supreme Court acknowledged "the highly discretionary process of awarding governmental contracts," and held that "a disappointed low bidder on a public contract has no standing to sue in order to challenge the award of a contract to another bidder." Accordingly, when a municipal charter provision requires the acceptance of the lowest responsible bid, that provision exists "to *protect the interest of the citizens* of the city" while creating no legal interest for bidders. *Id.* (quotation marks and citation omitted); see also *Lasky v Bad Axe*, 352 Mich 272, 276; 89 NW2d 520 (1958) (statutes requiring competitive bidding, and that contracts be awarded to the lowest capable bidder, "are enacted for the benefit of property holders and taxpayers, and not for the benefit of or enrichment of bidders").

Plaintiff additionally asserts a special interest in the implementation of MCL 247.651h on the grounds that it is the *only party* with an adverse interest and claims it "played an integral role in the enactment" of MCL 247.651h, specifying that Subsection (4) was "achieved only with the advice and assistance of [plaintiff]." However, plaintiff cites no authority for the proposition that an organization acquires a legal interest in the proper implementation of legislation greater than that of the general public when that organization's lobbying had some apparent effect on the legislative result. See *Traverse City Record-Eagle v Traverse City Area Pub Sch Bd of Ed*, 337 Mich App 281, 298; 975 NW2d 104 (2021) ("When a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned.") (quotation marks and citation omitted).

Further, we observe that although the general public has an interest in the efficient use of highway funds, plaintiff's members, being concrete pavers, have a heightened interest in obtaining funds themselves by successfully bidding on paving contracts, regardless of the efficiency. And although plaintiff may hope, expect, and be prepared to prove that concrete offers a generally more efficient paving option than asphalt or other alternatives, that is an issue left to defendant's discretionary implementation of MCL 247.651h. See *Groves v Dep't of Corrections*, 295 Mich App 1, 7; 811 NW2d 563 (2011) ("Litigation aimed at second-guessing the exercise of discretion by the appropriate public officials in awarding a public contract will not further the public interest . . . The only circumstance that may provide a basis for an action to review the bidding process is the presence of evidence of fraud, abuse, or illegality. But such an action must be brought by the proper public official.") (quotation marks and citations omitted).

In the Court of Claims, plaintiff also relied on MCL 600.2041(3), which states that "an action to prevent the illegal expenditure of state funds . . . may be brought in the name of a domestic nonprofit corporation organized for civic, protective, or improvement purposes . . . ." The Court of Claims held that MCL 600.2041(3) did not confer standing on plaintiff because "[t]he 'expenditures' at issue will occur regardless of whether one of plaintiff's members or some other contractor is awarded various paving contracts," and "[t]hus, no expenditure will be stopped by this action." The court further noted that this Court has held that "an action which merely seeks to change which bidder is awarded a state contract is not within the purview of MCL 600.2041(3)," citing *Groves*, 295 Mich App at 9. On appeal, plaintiff invokes MCL 600.2041(3) exclusively in connection with its claim for injunctive relief, thus leaving unchallenged the Court of Claims's conclusion that MCL 600.2041(3) did not confer standing for purposes of the claim for declaratory relief. Accordingly, we will reserve our discussion of MCL 600.2041(3) for Part IV, and otherwise affirm the order of the Court of Claims concluding that plaintiff lacks standing to seek declaratory judgment.[2]

## IV. INJUNCTIVE RELIEF

### A. STANDARD OF REVIEW

"[E]quitable issues are reviewed de novo, although the findings of fact supporting the decision are reviewed for clear error. However, the granting of injunctive relief is within the sound discretion of the trial court . . . ." *Cipri v Bellingham Frozen Foods, Inc*, 235 Mich App 1, 9; 596 NW2d 620 (1999) (quotation marks and citations omitted).

### B. DISCUSSION

In Count I of plaintiff's complaint, it asked the Court of Claims to enjoin defendant "from continuing to use the New Program until further order from this Court," and to order that, "in the interim or during the suspension, cessation, or discontinuation of the New Program, all projects that [defendant] lets for bid or intends to let for bid be designed in compliance and accordance with [MCL 247.651h]." The court held that plaintiff's request for injunctive relief was improper because injunctive relief is a remedy, not a cause of action. Thus, the court concluded that the request for injunctive relief must be dismissed for that reason.

Plaintiff argues that when the complaint is read as a whole, its request for injunctive relief is supported on the grounds that defendant's alleged violation of MCL 247.651h constitutes "wrongful conduct" over which the "requested injunction is an appropriate remedy." For this purpose, however, plaintiff neither specifies a tort, nor explains how any part of MCL 247.651h implies the creation of a private cause of action. However, for the proposition that "courts sitting in equity may enjoin the violation of a statute," plaintiff cites *Attorney General ex rel Mich Bd of Optometry v Peterson*, 381 Mich 445; 164 NW2d 43 (1969), *Dearborn Nat'l Ins Co v Comm'r of Ins*, 329 Mich 107; 44 NW2d 892 (1950), and *Meridian Charter Twp v Roberts*, 114 Mich App

---

[2] We need not address the Court of Claims's alternative ground for denying declaratory relief on the basis that a necessary party—the asphalt pavers—were not participating in the action. By concluding that plaintiff lacks standing, that issue is moot.

803; 319 NW2d 678 (1982), amended on other grounds 324 NW2d 339 (1982). Those three cases, however, stand for the proposition that *governmental authorities* may obtain injunctive relief to prevent violations of criminal law. Reviewing MCL 247.651h, we can discern no basis for the proposition that the Legislature intended to provide parties such as plaintiff with a private cause of action, and plaintiff fails to identify any such language in the statute that would indicate the Legislature did.

Plaintiff also argues that MCL 600.2041(3) "functions as a cause of action" supporting its request for injunctive relief. We disagree.

In *Groves*, a disappointed bidder and its employees challenged the bidding process through which a public contract was awarded for installation and maintenance of inmate telephone systems at the Department of Corrections' facilities. *Groves*, 295 Mich App at 3-4. This Court rejected the plaintiffs' invocation of MCL 600.2041(3) on the ground that, "even if successful, litigation will not prevent public expense," because the expenses at issue "will be necessary no matter which bidder is awarded the contract." *Groves*, 295 Mich App at 9. We also observed that while the plaintiffs "ostensibly seek to rectify a public wrong, in reality, as employees of the disappointed bidder for a government contract, plaintiffs seek to further their own interests and circumvent the century-old rule that denies standing to disappointed bidders to challenge the discretionary award of a public contract." *Id*. at 6. The same is true here. Plaintiff is not advocating on behalf of the taxpayers generally, but rather on behalf of concrete pavers concerned about competition from asphalt pavers. MCL 600.2041(3) was not intended to act as a vehicle for such judicial lobbying in circumvention of the well-established rule denying "standing to disappointed bidders to challenge the discretionary award of a public contract." *Groves*, 295 Mich App at 6.

Affirmed.

/s/ Noah P. Hood
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly