## James Burnes, Appellee, v. Swift and Company, Appellant.

1. MASTER AND SERVANT, § 98a*—*when Workmen's Compensation Act deprives employe of right to sue.* Where the employer is a corporation, section 3 of the Compensation Act of 1911, J. & A. ¶ 5451, deprives an employe from suing to recover for injuries under the Act of 1909, providing for the health, safety and comfort of employes, J. & A. ¶¶ 5386 *et seq.*, where the injury was caused by the intentional omission of a person other than an elective officer of the corporation.

2. MASTER AND SERVANT, § 98a*—*word "intentional" in Compensation Act construed.* The word "intentional" in the proviso of section 3 of the Compensation Act of 1911, J. & A. ¶ 5451, was not intended to be given the broad construction of the word "wilful" is construed in the Miners' Act.

3. MASTER AND SERVANT, § 98a*—*Compensation Act as affecting right of employe to sue.* Section 3 of the Compensation Act of 1911, J. & A. ¶ 5451, takes away from an employe the right of action, either at common law or under the statute, relating to the safety of employes unless he brings himself within the proviso that excepts him from the operation of that statute.

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

Burnes v. Swift and Co., 186 Ill. App. 460.

Appeal from the City Court of East St. Louis; the Hon. ROBERT H. FLANNIGAN, Judge, presiding. Heard in this court at the October term, 1913. Reversed and remanded. Opinion filed May 1, 1914.

C. E. POPE, for appellant.

D. J. SULLIVAN, for appellee.

MR. PRESIDING JUSTICE MCBRIDE delivered the opinion of the court.

The appellee recovered a judgment against appellant in the City Court of East St. Louis, Illinois, for five thousand, five hundred dollars, which appellant seeks by this appeal to reverse.

Appellee was at the time of the injury engaged at work for appellant as a carpenter's helper and assisting a man by the name of Mochel. The name of the general foreman was Meyers, who had charge of various gangs of carpenters. They were engaged in remodeling a portion of the plant called the sausage room and in the remodeling it became necessary to remove some old girders that were located ten or twelve feet above the floor of the room and replace them with others. They consisted of pine timbers 10 x 10 inches and sixteen feet long and were four in number. Three of these girders had been taken down prior to the time appellee was injured and they were working upon the fourth one and within two feet of and parallel with the main power shaft. These pine girders were being replaced with steel girders. Upon this power shaft and near one end of the fourth girder there was a collar fastened with a set screw that extended out one inch or more beyond the collar. This shaft was kept in motion during all the time that the men were engaged in the removing of the girders. It is claimed by appellant that the general foreman directed Mochel to shut down the machinery and stop the shafting from being run at the time they were

engaged in the removal of this fourth girder. Appellee insists that the order did not have application to any particular girder but applied to all of the machinery and that the machinery continued to operate after this order was given and to the knowledge of the foreman. On account of the inability of Mochel to find the oiler or millwright to stop the machinery when ready to take down the fourth girder, Mochel undertook to stop it himself but was unable to do so, and he decided to go on and take down the girder without the machinery being stopped, and while engaged in taking down the last of the girders appellee stepped back a few inches to allow the girder to be swung so that it could be let down, when the leg of his overalls came in contact with the set screw on the power shaft and his clothing was immediately wound around the shaft, carrying appellee around it a number of times, until his clothing was all torn from his body, except his shoes and socks, and he was badly injured. The evidence tends to show that the injury received is a permanent one. It is claimed by appellee that the foreman was present a number of times during the day while appellee and those assisting him were taking down these girders and knew that the machinery had not been stopped but said nothing further about it. It also appears from the evidence that the direction to stop the machinery was given to Mochel, and appellant claims that appellee was present at the time and heard the order given. This, however, is denied by the appellee.

The declaration consists of one count and alleges that appellant was engaged in the business of preparing and preserving meat products, and was possessed of and using as a part of the equipment of its said plant a certain shaft used in communicating power to certain machinery used in its business. That upon said shaft was an iron or steel collar from which projected an unguarded set screw, that said shaft col-

lar and said set screw revolved at a high rate of speed and was located near the place where certain of defendant's servants in the line of their duty were required to work and that it was practical to guard or fence the same, but the defendant wilfully and intentionally failed to fence, guard or otherwise protect the said set screw; that upon the 3rd day of August, 1912, appellee while employed as a carpenter's helper for appellant, and in the line of his duty, and while assisting in removing a girder, his clothing was caught by said set screw and he was whirled around the said shaft and seriously injured.

Appellant has assigned several errors herein but they all relate to the same proposition, namely, that the relief for the injuries to appellee accrues to him under an act entitled, "An act to promote the general welfare of the People of this State by providing compensation for accidental injuries or death suffered in the course of employment." Approved June 10, 1911, and in force May 1, 1912, and commonly known as "The Compensation Act." (J. & A. ¶¶ 5449 et seq.)

It will be observed that the declaration in this case charges that the defendant wilfully and intentionally failed to fence, guard or otherwise protect a set screw that projected from the iron or steel collar upon the power shaft, and claims that the liability of appellant is not under the Compensation Act but is under the act entitled, "An act to provide for the health, safety and comfort of employes in factories, etc." Approved June 4, 1909, in force January 1, 1910. (J. & A. ¶¶ 5386 et seq.)

As we read this record, a decision of this case depends entirely upon the construction given to these statutes under the undisputed evidence herein.

It appears from the evidence, and is in fact conceded by both parties, that at the time of the injury the appellant and appellee had both accepted and were working under the terms and provisions of the Com-

pensation Act, except that appellee insists that he does not come within the proviso of section 3 of said act. (J. & A. ¶ 5453.) The provision of the act with reference to the health, safety and comfort of employes, under which this declaration is filed, provides that all power driven machinery, including all saws, planes, wood shapers, jointers, sandpaper machines, iron mangles, emery wheels, ovens, furnaces, forges and rollers of metal, all projecting set screws on moving parts, shall be so located wherever possible as not to be dangerous to employes, or shall be properly inclosed, fenced or otherwise protected.

The act providing compensation for accidental injuries and death, after reciting the duties and liabilities of the employer and employe thereunder, provides by section 3 (J. & A. ¶ 5453) as follows: "No common law or statutory right to recover damages for injury or death sustained by any employe while engaged in the line of his duty as such employe other than the compensation herein provided shall be available to any employe who has accepted the provisions of this act or to any one wholly or partially dependent upon him or legally responsible for his estate: *Provided,* that when the injury to the employe was caused by the intentional omission of the employer, to comply with the statutory safety regulations, nothing in this act shall affect the civil liabilities of the employer. If the employer is a partnership, such omission must be that of one of the partners thereof, and if a corporation, that of any elective officer thereof." There is no evidence in this record showing who any of the elective officers of the appellant corporation are; no evidence that any elective officer of the Company had any knowledge that the set screw which injured appellee was upon the shaft, or that any elective officer of said Company had intentionally omitted to comply with the statutory regulations, except the general evidence that the set screw was there, that it was not

guarded and that the foreman of appellant was familiar with the place where the shafting, to which this set screw was attached, was being operated and had the opportunity to know its condition. It is insisted by counsel for appellee that: ''The master being a corporation was required to see that this act was complied with through its officers who were authorized to carry out its corporate power. It was the duty of its board of directors, who were elective officers under said section 6 of the Corporation Act, to see that its servant to whom it had committed the management of its business, fenced or guarded the set screw. It was the duty of the defendant through its board of directors, who were elective officers, who were charged by the law with the carrying out of its corporate powers, as soon as this law took effect to take steps to comply with the duty imposed and to provide for the fencing or otherwise guarding of this set screw.'' He then argues that the word ''intentional'' in said section 3 of the Compensation Act should be construed just as the word ''wilful'' is construed in the Mining Act, and makes reference to several decisions of the Supreme Court holding, in effect, that the neglect of any mining company through its manager, agent or vice-principal is held to be a wilful neglect under the mining statute and that the defendant is liable for such neglect, which we recognize as being clearly the rule adopted by our Supreme Court in the construction of that act.

It will be observed that at the time of the adoption of the Compensation Act, including section 3 thereof, that the construction given by the Supreme Court had been often passed upon and was the recognized rule with reference to the construction of that statute. That in order to create a liability it was only necessary to show a wilful violation by the manager or other vice-principal, and with this construction by the Supreme Court the legislature in passing section 3 of

the Compensation Act used language which indicates to our minds a clear intention of the legislature to get away from the broad construction given to the wilful violation under the Miners' Act. Note—It says: "*Provided,* that when the injury to the employe was caused by the intentional omission of the employer, to comply with the statutory safety regulations, nothing in this act shall affect the civil liability of the employer. If the employer is a partnership, such omission must be that of one of the partners thereof, and if a corporation, that of any elective officer thereof." Assuming, as contended by appellee, that "wilful" and "intentional" are used synonymously, this, as we view it, does not assist appellee in his contention as to the construction of this statute. This statute confines the intentional omission to a particular person, to wit, an elective officer of the corporation. It must be borne in mind that the Compensation Act takes away from appellee entirely the right of action, either at common law or under the statute, unless he brings himself within the proviso that excepts him from the operation of that statute.

It is argued by counsel for appellee, with much force and plausibility, that it would be almost impossible to bring notice to an elective officer, and that for a party injured to be required to do so would practically render the Safety Appliance Act nugatory. We agree with counsel that such construction places a great burden upon appellee, but it should be borne in mind that the object of the legislature in passing the Compensation Act was to bring every person within its provision that it was at all practical to do. It was for the legislature and not the courts to determine under what circumstances and conditions and for what injuries the Compensation Act should be adopted and for what ones the Safety Act should prevail. It is insisted that to bring the notice to an elective officer would require direct personal notice. We are not pre-

pared to adopt this theory as circumstances surrounding a transaction might be of such a character as to warrant a jury in finding an intentional omission, but that question is not now before us. It seems to us from a reading of section 3 of said statute that its language is of that character that it can have but one meaning, and that is that the intentional omission must be that of some elective officer of such company. We think the case of *Breitung v. Lindauer,* 37 Mich. 217, cited by counsel upon the question of intentional neglect, is in point in this case, and is as follows: "We are also of opinion that from the facts found the conclusion arrived at 'that under the statute the neglect or refusal was an intentional one' was erroneous. This provision of the statute making directors of a corporation liable where they intentionally neglect to make and file a certain report, cannot be construed as though the word 'intentional' was omitted, and yet such in effect was the construction given it by the court below in the conclusion arrived at  *  *  * In this case we are not at liberty to draw any inference, as to the intention of the directors, from the fact that no report was made. The court does not leave this question to be determined upon presumptions arising from the omission to report, but finds the facts to be that the directors had no active intention to violate the law; that they did not think of it; that the subject of filing these reports did not occur to them or to a majority of them, including this defendant. It may be that difficulty will be encountered in showing an intentional neglect, where the directors deny any such intention. Their denial would not be conclusive and the court or jury might be warranted in finding, from the surrounding circumstances, the neglect to have been intentional, even though denied by the directors. The difficulty in this direction, however, more properly pertained to the legislative department." We have carefully considered the question here involved and feel that there is no uncertainty in the language of this

statute and that we are bound to give it the meaning apparently intended by the legislature, and unless there is evidence showing an intentional omission of some elective officer of this Company to comply with the statutory safety regulations then appellee's remedy must be that provided for in the Compensation Act.

For reasons above suggested the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*