DEARBORN NATIONAL INSURANCE COMPANY *v.*
COMMISSIONER OF INSURANCE.

1. INSURANCE—EVALUATION OF ASSETS OF COMPANY BY COMMISSIONER.

The evaluation of assets of an insurance company at actual value by the State commissioner of insurance is to be made in the manner approved by the commissioner, and does not need to be the then-actual value as of the time of the evaluation but may be the actual cost of the asset to the company if such latter method be the one used by the commissioner (CL 1948, § 511.16 [8b]).

2. SAME—EVALUATION OF ASSETS—ACTUAL COST.

Actual cost to company of unlisted stock of a subsidiary company is a permissible method of evaluating assets of an insurance company by the commissioner of insurance (CL 1948, § 511.16 [8b]).

3. SAME—POWERS OF COMMISSIONER—RECEIVERS.

The commissioner of insurance has all the powers of a receiver with respect to insurance companies in this State which fail to obey an order to make good any deficiency or, after an examination, is found to be in such condition that its further transaction of business will be hazardous to its policyholders, or to its creditors, or to the public (CL 1948, §§ 503.2–503.4, 511.16).

4. SAME—PUBLIC INTEREST.

The insurance business is affected with a public interest.

5. SAME—CONSTRUCTION OF STATUTES.

The insurance laws are liberally construed in favor of policyholders, creditors and the public.

---

REFERENCES FOR POINTS IN HEADNOTES
[3] 29 Am Jur, Insurance, § 70.
[4] 29 Am Jur, Insurance, § 22.

6. SAME—COMMISSIONER OF INSURANCE—PARENT COMPANY'S SALE
OF STOCK IN SUBSIDIARY.

The authority of the commissioner of insurance to order a defend-
ant insurance company to sell stock it owns in subsidiary com-
panies is not restricted by statute to a showing that a director
or officer of the parent company has a pecuniary interest in
the sale to it of the subsidiary's stock either as principal,
coprincipal, agent or beneficiary (CL 1948, § 511.16a).

7. EQUITY—JURISDICTION—PENAL STATUTES.

The existence of a penal provision in a statute or an ordinance
does not necessarily have the effect of ousting the chancery
court of jurisdiction, where prosecution does not afford an
adequate remedy.

8. INSURANCE — EQUITY — JURISDICTION — COMPULSION OF PARENT
COMPANY TO SELL UNLAWFULLY HELD ASSETS.

Equity has jurisdiction to compel a parent insurance company
to dispose of the unlawfully held interest in a subsidiary cor-
poration notwithstanding statute providing for prosecution
of an officer or director for a misdemeanor for causing such
purchase by the parent company, where such prosecution does
not afford an adequate remedy for the protection of the policy-
holders or creditors of the parent company (CL 1948, §§ 501.-
5b, 511.16).

9. SAME—DIVERSIFICATION OF INVESTMENTS.

The commissioner of insurance has the authority to require
parent insurance companies to refrain from keeping their re-
sources invested in securities of enterprises so related that they
are controlled by one individual who not only controls the
parent companies but the subsidiary enterprises as well, where
the findings of fact of the commissioner that the transactions
result actually or potentially in evasion of the principles of
diversification of investment embodied in the insurance code
are supported by the record (CL 1948, §§ 503.2–503.4, 511.16,
511.16a).

Appeal from Wayne; Maher (Thomas F.), J.
Submitted June 13, 1950. (Docket No. 79, Calendar
No. 44,795.) Decided December 5, 1950. Rehearing
denied March 1, 1951.

Bill by Dearborn National Insurance Company and
another against David A. Forbes, Commissioner of

Insurance of State of Michigan, to review one of his orders. Order affirmed. Plaintiffs appeal. Affirmed.

*Wurzer, Higgins & Starrs (John T. Higgins* and *John R. Starrs,* of counsel), for plaintiffs.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Maurice M. Moule,* Assistant Attorney General, for defendant.

BOYLES, C. J.   This is an appeal from a decree of the circuit court for Wayne county in chancery affirming the findings and an order of the defendant commissioner of insurance directing the appellant insurance companies to dispose of the securities (stock) held by them in certain corporations. The essential facts have been stipulated.

Appellant Dearborn National Insurance Company was incorporated in 1936 with David F. Broderick as the principal incorporator. Underwriters Acceptance Corporation (Delaware) immediately became the holder of the principal stock interest, and subsequently of all of the stock of Dearborn National Insurance Company, except directors' qualifying shares and shares held by employees. Underwriters Acceptance Corporation held, as of June 30, 1947, 196,590 shares of the outstanding 200,000 shares of capital stock of Dearborn National Insurance Company.

Appellant Dearborn National Casualty Company was incorporated in 1933, as the Great Lakes Casualty Company, as a reorganization of part of the business of Central West Casualty Company. From 1933 to December 20, 1938, the insurance commissioner of the State, as receiver of the Central West Casualty Company, held and voted all of the stock

(except directors' qualifying shares) of Great Lakes Casualty Company, as an asset of said receivership. In 1938, the insurance commissioner, as receiver of Central West Casualty Company, and holder of all of the capital stock of Great Lakes Casualty Company, as an asset of said receivership, sold all of said capital stock of Great Lakes Casualty Company to Underwriters Acceptance Corporation (then known as D. F. Broderick Incorporated) and its affiliates, including Dearborn National Insurance Company, which then acquired 5,000 shares of the capital stock of Great Lakes Casualty Company. Dearborn National Insurance Company also acquired in 1938, as contributed surplus and at no cost to it, 6,584 shares from stockholders. The name of the Great Lakes Casualty Company was subsequently changed to Dearborn National Casualty Company, one of the appellants herein, and it has continued to operate under that name.

Dearborn National Casualty Company, as of June 30, 1947, held 197,350 shares of the common capital stock out of 295,587 shares outstanding, and 11,000 shares preferred stock, of Intertown Corporation. Said Intertown Corporation holds controlling stock interest in Dearborn Coach Company, a Michigan corporation, which owns all of the stock of Lincoln Park Coach Company, a Michigan corporation. Intertown Corporation also holds controlling stock of the Geoda Corporation. Dearborn National Casualty Company has received from Underwriters Acceptance Corporation, as contributed surplus, 5,000 shares of the common stock and 1,000 shares of the preferred stock of said Geoda Corporation.

David F. Broderick holds voting control of Underwriters Acceptance Corporation, and the board of directors of that corporation has voting control of the appellant Dearborn National Insurance Company, and the board of directors of that company

has voting control of the stock of the appellant Dearborn National Casualty Company; the board of directors of that company has voting control of the stock of Intertown Corporation; and the board of directors of that company has voting control of the stock of Dearborn Coach Company and of Geoda Corporation.

David F. Broderick, personally, holds directors' qualifying shares in Dearborn National Insurance Company and in Dearborn National Casualty Company. He is the president and a director of each of said companies as well as of Intertown Corporation, Dearborn Coach Company, Geoda Corporation, and, also, of Underwriters Acceptance Corporation.

On or about June 30, 1944, Intertown Corporation made a $200,000 down payment on a land contract for the purchase of Eaton Tower, now known as David Broderick Tower, a 34-story office building in Detroit. The purchase contract called for payment by Intertown of a balance of $1,025,000. On or before December 31, 1945, Intertown Corporation, then having a land contract vendee's equity in the building of approximately $225,000, marked up its equity by approximately $252,950 additional value, to $477,950. The department of insurance refused to accept the mark-up, and on or about November 18, 1946, Intertown paid off the balance of its purchase contract by securing a mortgage for $1,250,000 from Equitable Life Assurance Sociey of New York. Shortly thereafter Intertown Corporation sought to evaluate its equity over the mortgage at an amount in excess of $975,000, which evaluation of its equity by Intertown Corporation the examiners for the department refused to allow. In that connection, the commissioner actually considered the evaluation of the property held by the subsidiary Intertown Corporation.

Since 1936, Dearborn National Insurance Company has in 12 years' operation experienced net underwriting losses aggregating $1,130,350.96; and has shown investment gains, principally through the Broderick-controlled corporations, totalling $1,185,-790.84. Since 1937, Dearborn National Casualty Company has in 11 years' operation experienced net underwriting losses aggregating $1,079,479.50; and has shown investment gains, principally through said Broderick-controlled corporations, of $1,579,-185.99.

Appellants concede that the statutes governing State regulation of casualty and fire rates, so that they shall not be excessive or inadequate, make no provision or allowance of latitude for investment gains; but claim that part 2, ch 1, § 16 of the insurance code* (CL 1948, § 511.16 [Stat Ann 1943 Rev § 24.84]), requires that "actual value" of an asset controls, in determining the condition of an insurance company. It is stipulated that the rules of the National Association of Insurance Commissioners on Valuation of Securities have for many years contained the following directives:

*"Deduction from Admitted Assets on Account of Interownership of Insurance Companies Stocks:*

"Stock of the company itself, owned by it, or any equity therein or loans secured thereby, or any proportionate interest in such stock through the ownership by such company of an interest in another firm, corporation or business unit, shall not be an admitted asset.

*"Valuation of Stock of a Subsidiary Company.*

"The stock of a subsidiary (other than an insurance company) of an insurer, shall be valued on the basis of the value of only such of the assets of such subsidiary as would constitute lawful investments

---

* PA 1917, No 256. This section was amended by PA 1949, No 181, in a manner not material to this case.—REPORTER.

for the insurer if acquired or held directly by the insurer."

The controlling issue for decision in this case depends on the construction of part 2, ch 1, § 16 (8) of the insurance code (CL 1948, § 511.16[8] [Stat Ann 1943 Rev § 24.84(8)]), the material part of which is as follows:

"(a)   Any stock fire, casualty or title insurance company may purchase such stocks, bonds or other evidence of indebtedness of solvent corporations, except insurance companies, as its board of directors or a committee of such board, entrusted by it with the investment of such company's funds, in the exercise of its judgment may deem proper, and such company may also lend its funds with such securities as collateral but no loans shall be made of more than 50 per cent. of the fair market value thereof; and such company may hold such stocks so purchased and such loans so made as an investment;

"(b)   Any stock fire or casualty insurance company shall, with the consent of the commissioner of insurance, have the power to purchase, in an amount not to exceed 1/10 of its assets, the whole or any part of the shares of stock of any solvent insurance company except the stock of life insurance companies organized under the laws of this, or any other State, and hold the same as an investment: *Provided,* That no funds of any such company shall be invested in or loaned on its own stock: *Provided further,* That the commissioner of insurance in determining the condition of any such company purchasing, or lending on the securities referred to in paragraphs (a) and (b) hereof, shall not allow the funds, so employed and invested, as and for an asset at more than the actual value, as ascertained in the manner approved by him: * * * *Provided further,* That if at any time it shall appear to the commissioner of insurance that there is a deficiency in the surplus in that the value of the total holdings

by any company of such securities shall exceed such surplus funds, and if in his judgment the financial stability of the company shall be impaired thereby, he shall issue an order to such company to make good such deficiency within such reasonable time as he may prescribe either by the sale or other disposal of sufficient of such securities, or by the addition to the surplus funds of sufficient legal assets, other than those permitted as an investment in paragraphs (a) and (b) hereof."

Turning at once to the question as to the method to be adopted for evaluating the assets of an insurance company, appellants argue that the commissioner must determine the then-actual value of the assets of the corporations, the stock of which is held as assets of the insurance company, disregarding the cost to the company being examined, of the particular assets (in this case, the stock of the subsidiary corporations indirectly controlled by David F. Broderick). This would seem to mean that the commissioner, in determining the assets of the 2 appellant insurance companies, must examine into and determine the actual value of the property of each of the Broderick-controlled subsidiary corporations; and probably the actual value of the property owned by any other corporations, stock in which was held by such subsidiary companies; and so on, *ad infinitum*. However, the statute does not so require, and the answer to that question is in the statute itself (CL 1948, § 511.16[8b] [Stat Ann 1943 Rev § 24.84 (8b)]):

"The commissioner of insurance in determining the condition of any such company purchasing, or lending on the securities referred to in paragraphs (a) and (b) hereof, shall not allow the funds, so employed and invested, as and for an asset at more than the actual value, *as ascertained in the manner approved by him.*"

Under the circumstances of this case, the cost to the appellant companies of the unlisted stock of the underlying Broderick-controlled subsidiary corporations which are engaged in various fields of activity, is an essential element which may be controlling in determining the value of such securities, held by the appellant companies. The record before us as to these various corporate entities, the stock in which in substance makes up the assets of the appellant corporations, the interlocking directorates, and the control of said corporations which obviously rests in David F. Broderick through the overriding corporate Underwriters Acceptance Corporation, justifies the commissioner in investigating, and relying on the cost of the stock of these corporations to the insurance companies under examination, in determining the condition of the appellant companies.

In December, 1945, the commissioner ordered the appellant companies to correct certain investments in such securities to the extent that they would not be in violation of said subsection 8b, *supra,* of the insurance code, and likewise in violation of subsection 10* of said section 16 (CL 1948, § 511.16 [Stat Ann 1943 Rev § 24.84]), which subsection reads as follows:

"No insurance company shall have more than 10 per cent. of its capital and surplus invested in or loaned upon the securities of any 1 institution, nor to any 1 person, corporation or firm on collateral pledges, but this restriction shall not apply to obligations of the United States nor those of agencies or instrumentalities thereof, principal and interest of which are fully guaranteed by the United States, nor to investment in stocks of other insurance companies under the provisions of paragraph (b) of clause eighth of section 16 above."

* PA 1949, No 181, placed this matter in subsection 11 of said section 16.—REPORTER.

In January, 1948, the appellant companies were ordered by the defendant insurance commissioner to show cause, before the commissioner, why an order should not be issued to both of them requiring them to dispose of investments not complying with the provisions of part 2, ch 1, § 16a, of the Michigan insurance code, and also to learn why the companies had not complied with the order of December 18, 1945. A hearing was held by the commissioner, and evidence produced, from which it became apparent that David F. Broderick was the president of both of the appellant insurance companies, was also president of the Underwriters Acceptance Corporation and, together with his wife, owned over 50 per cent. of the stock of the latter corporation. Also, that Underwriters Acceptance Corporation owned the majority of the stock of both of the appellant insurance companies. It was established that Broderick was also either an officer or director of the following corporations: Intertown Corporation (Michigan); Geoda Corporation (Michigan); Broderick Corporation (Michigan); Dearborn Coach Company (Michigan); D. F. Broderick Corporation (Delaware); D. F. Broderick Corporation (Illinois); D. F. Broderick Corporation (Indiana); D. F. Broderick Corporation (New York); Jefferson Adjustment Bureau, Incorporated (Michigan); and Intertown Lines System Corporation (Michigan). It was further shown that the stocks of all of these corporations were in the investment portfolio of the Dearborn National Casualty Company and the Dearborn National Insurance Company.

The commissioner ordered that all securities owned by the Dearborn National Casualty Company and the Dearborn National Insurance Company, in which the officers and directors of these companies are pecuniarily interested, namely, the Intertown Corporation (Michigan), Geoda Corporation (Mich-

igan), Broderick Corporation (Michigan), Dearborn
Coach Company (Michigan), D. F. Broderick Cor-
poration (Delaware), D. F. Broderick Corporation
(Illinois), D. F. Broderick Corporation (Indiana),
D. F. Broderick Corporation (New York), Jefferson
Adjustment Bureau, Incorporated (Michigan), and
the Intertown Lines System Corporation (Michi-
gan), be disposed of not later than April 1, 1949.
Thereupon the appellant companies filed in the cir-
·cuit court for Wayne county in chancery the instant
petition for review of said action taken by the com-
missioner, under the provisions of CL 1948, § 501.5b
(Stat Ann 1949 Cum Supp § 24.5[2]).

Appellants claim that the commissioner has no
power to require an insurance corporation to divest
itself of any corporate stock held by it.   Part 2, ch 1,
§ 16, of the insurance code, *supra,* expressly pre-
scribes the securities and properties in which in-
surance companies may invest their funds.   Sub-
section 8a, heretofore quoted, permits investments in
corporate securities, within definite limitations.
Section 2 (CL 1948, § 503.2 [Stat Ann 1949 Cum
Supp § 24.41]) authorizes the commissioner to apply
to the circuit court for an order directing the insur-
ance company to show cause why the commissioner
should not take possession of its property and con-
duct its business, whenever the company has neg-
lected or refused to observe an order of the com-
missioner to make good any deficiency, or (among
other grounds) whenever the company "is found,
after an examination, to be in such condition that its
·further transaction of business will be hazardous to
its policyholders, or to its creditors, or to the pub-
lic."  Under succeeding sections,* the commissioner
may take possession of the property and conduct the
business, or liquidate the assets and dissolve the

* CL 1948, §§ 503.3, 503.4 (Stat Ann 1943 Rev §§ 24.42, 24.43).

corporation, by order of the court. The commissioner has all the powers of a receiver.

The insurance business is affected with a public interest. The insurance laws are liberally construed in favor of policyholders, creditors and the public. *Commissioner of Insurance* v. *American Life Ins. Co.*, 290 Mich 33. Appellants claim that the authority of the commissioner to order them to dispose of securities which the commissioner finds are held in violation of the insurance code, if such authority exists, must be found in CL 1948, § 511.16a (Stat Ann 1943 Rev § 24.85), which declares that:

"No director or officer of an insurance corporation doing business in this State shall receive any money or valuable thing for negotiating, procuring, recommending or aiding in any purchase by or sale to such corporation of any property or any loan from such corporation, *nor be pecuniarily interested*, either as principal, coprincipal, agent or beneficiary in any such purchase, sale or loan: * * * Any person violating any provision of this section shall be guilty of a misdemeanor."

We do not agree with appellants that under the circumstances of this case the authority of the commissioner must be found solely in said section, or that equity has no jurisdiction under these circumstances on the ground that said section is a penal statute, enforcement of which must rest solely in an arrest and conviction for a misdemeanor. The existence of a penal provision in a statute or an ordinance does not necessarily have the effect of ousting the chancery court of jurisdiction, where prosecution does not afford an adequate remedy. *People, ex rel. Secretary of State,* v. *State Ins. Co.,* 19 Mich 392; *Board of Health of the City of Grand Rapids* v. *Vink,* 184 Mich 688; *Township of Warren* v. *Raymond,* 291 Mich 426. The remedy provided by said

section—prosecution of an officer or director for a
misdemeanor, does not afford an adequate remedy
for the protection of the policyholders or creditors
of the appellant insurance companies, or of the pub-
lic.   Equity has jurisdiction, under the circum-
stances of this case.

By looking through and behind these numerous
corporate entities, we find David F. Broderick in
control of both the appellant insurance companies
as well as the various enterprises in which the funds
of these insurance companies have been invested by
acquiring the stock of these corporations.   It may
be conceded that David F. Broderick is only indirect-
ly interested in the acquiring of these corporate
stocks by the appellant insurance companies through
the investment of their funds.   But Broderick holds
voting control of Underwriters Acceptance Corpo-
ration, which corporation effectively has control of
the 2 appellant insurance companies and, through
them, the control of the various enterprises in
which the insurance funds have been invested.   One
of the important elements in this case, which must
be considered in determining the result, concerns
the numerous corporate entities set up under Brod-
erick's control by means of which the funds of the
appellant insurance companies have been used, di-
rectly or indirectly, to finance some 8 or 10 different
Broderick enterprises in other corporate fields.

Under the circumstances of the case, we conclude
that the insurance commissioner has the authority
to require the appellant companies to refrain from
keeping their resources invested in the securities
of these related enterprises, where he finds that both
the insurance companies and the enterprises in
which their funds have been invested (by the acquir-
ing of stock) are controlled by the same individual
through a mechanism of corporate holding compa-
nies and personal control of the voting powers, and

where the commissioner has arrived at a finding that the transactions result actually or potentially in evasion of the principles of diversification (embodied in the insurance code), by the intertwining of corporate enterprises so that separate appraisement of investments of the insurance companies under examination becomes difficult or impossible.

The record before us factually supports the findings and justifies the order of the commissioner. The decree from which this appeal is taken affirms said order *in toto.*

Other questions raised by appellants have been considered and do not control the result on the issues before the Court. The decree is affirmed and the case remanded for enforcement, with costs to appellee.

REID, NORTH, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.