METRY, METRY, SANOM & ASHARE v MICHIGAN PROPERTY &
CASUALTY GUARANTY ASSOCIATION

VANDEVEER, GARZIA, TONKIN, KERR & HEAPHY, P. C. v
MICHIGAN PROPERTY & CASUALTY GUARANTY ASSOCIATION

OPINION OF THE COURT

1. INSURANCE—INSOLVENT INSURERS—UNCOLLECTIBLE CLAIMS—PROP-
ERTY AND CASUALTY GUARANTY ASSOCIATION—DISCHARGE OF
OBLIGATIONS—STATUTES.

The Michigan Property and Casualty Guaranty Association has a
statutory obligation to pay and discharge in full those obliga-
tions of an insolvent insurer ·which come within the definition
of "covered claims" (MCLA 500.7901 *et seq.;* MSA 24.17901 *et
seq.).*

2. INSURANCE—INSOLVENT INSURERS—PROPERTY AND CASUALTY GUAR-
ANTY ASSOCIATION—DISCHARGE OF OBLIGATIONS—EMPLOYMENT
OF ATTORNEYS—ATTORNEY FEES—ATTORNEYS AS INSOLVENT
CREDITORS—APPEAL AND ERROR—REMAND.

The Michigan Property and Casualty Guaranty Association is
responsible for defending insurance claims unsettled at the
time of the insolvency of an insurer and to hire a law firm to
complete the work where necessary; law firms which have
already started on such claims should not be denied compensa-
tion for their earlier work product, but, law firms are not
entitled to any sums which represent legal work completed for
the insolvent insurers prior to insolvency and for such work the
law firms are to be treated as any other insolvency creditor;
remand to the trial court is necessary where the Court of
Appeals is unable to ascertain from the record what form of
the two types of legal fees the law firms are suing for.

DISSENT BY D. C. RILEY, J.

3. INSURANCE—INSOLVENT INSURERS—PROPERTY AND CASUALTY GUAR-
ANTY ASSOCIATION—ATTORNEY FEES—STATUTES.

*The Michigan Property and Casualty Guaranty Association is not
required by statute to pay legal fees incurred by an insolvent*

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 43 Am Jur 2d, Insurance § 130 *et seq.*

*insurer prior to the insurer's insolvency (MCLA 500.7901 et
seq.; MSA 24.17901 et seq.).*

Appeal from Wayne, Benjamin D. Burdick and
Thomas Roumell, JJ. Submitted May 9, 1977, at
Detroit. (Docket Nos. 27752, 28050.) Decided October 24, 1977. Leave to appeal applied for.

Complaints by the law firms of Metry, Metry,
Sanom & Ashare and Vandeveer, Garzia, Tonkin,
Kerr & Heaphy, P. C., against Michigan Property
and Casualty Guaranty Association to recover legal fees. Judgment for defendant in the Metry,
Metry, Sanom & Ashare case. Plaintiff appeals.
Summary judgment for Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P. C., in the other case.
Defendant appeals. Cases consolidated. Both cases
remanded to their respective trial courts.

*Leven, Logan, Ashare & Chinitz, P. C.,* for plaintiff law firm, Metry, Metry, Sanom & Ashare.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy,
P. C.,* for plaintiff law firm.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by
*Donald S. Young* and *Nancy C. Kurtz),* for Michigan Property & Casualty Guaranty Association.

Before: N. J. KAUFMAN, P. J., and V. J. BRENNAN
and D. C. RILEY, JJ.

N. J. KAUFMAN, P. J. The Michigan Property and
Casualty Guaranty Association Act (hereinafter
referred to as the "Act"), 1969 PA 277,[1] was enacted to provide a guarantee to both insureds and
parties injured by insureds that insurance claims
would not become uncollectible if an insurer became insolvent. The Michigan Property and Casualty Guaranty Association (hereinafter referred to

---

[1] MCLA 500.7901 *et seq.;* MSA 24.17901 *et seq.*

as the "Association") was created by the Act. The Association has the statutory obligation to pay and discharge in full those obligations of an insolvent insurer which come within the definition of "covered claims".[2]

This legislation was intended to remedy the situation which existed prior to its passage. Previously, if an insured's company went bankrupt, he was left facing an outstanding judgment, despite having paid money to the insurer in the form of premiums. On the other hand, the injured party frequently held a judgment against an uninsured party. Often, the uninsured party was uncollectible; certainly if the judgment was large enough, the losing party would declare bankruptcy. Furthermore, under the old system, attorneys for bankrupt insurance companies would almost certainly file motions to be relieved on the basis that they could not collect for their work.

Subsequent to the passage of the Act, the inequities of the prior system are substantially remedied. Now the Association supplants bankrupt insurers, allowing attorneys to be hired to represent clients of the insolvent insurers and, if necessary, satisfy judgments which normally would be paid by the insurer. The Association, by assessing pro rata every insured driver in Michigan on future premiums, accumulates the funds necessary to discharge its obligations.

This action, which involves consolidated cases from different Wayne County circuit courts, revolves around whether the definition given the

---

[2] MCLA 500.7925; MSA 24.17925, in pertinent part:

"(1) 'Covered claims' means obligations of an insolvent insurer which: (i) arise out of the insurance policy contracts of the insolvent insurer issued to residents of this state or are payable to residents of this state on behalf of insureds of the insolvent insurer, [and] (ii) were unpaid by the insolvent insurer, * * * ."

term "covered claims" in the Act includes certain types of legal fees.

In the *Metry* case, plaintiff is a Michigan copartnership authorized to practice law in the State of Michigan. The action seeks recovery of legal fees for services performed as attorneys or "legal representatives" of LaSalle National Insurance Company, an Illinois insurance company, prior to the insolvency of LaSalle. Defendant is the Association.

After a full trial on the merits, Judge Benjamin D. Burdick held that plaintiff's claims were not "covered claims" under the Act because they did not "arise out of insurance policy contracts" issued by LaSalle, but instead arose out of separate retention agreements between the plaintiff firm and LaSalle. Plaintiff there appeals.

In the *Vandeveer* case, the plaintiff is a Michigan professional corporation, authorized to practice law in the State of Michigan, which brings this action for fees for legal services performed as attorneys or "legal representatives" of Citizens Casualty Company of New York, a New York insurance company, and of Commercial Underwriters, a Michigan reciprocal insurance exchange. Plaintiff law firm brought suit against the Association in November, 1973, seeking recovery of $18,000 for legal services performed pursuant to its agreement with Citizens. Thereafter, plaintiff filed a supplemental complaint seeking recovery of an additional $201,000 for legal services performed pursuant to its agreement with Commercial Underwriters.

Plaintiff filed a motion for summary judgment and defendant filed a cross-motion for summary judgment. After due consideration, Judge Thomas Roumell found that the disputed language was

clear and unambiguous. Legal fees were obligations which arose "out of the insurance policy contracts of the insolvent insurer". He noted that if the Legislature wished to exclude legal fees, it could have done so clearly in the statute. Therefore, he granted plaintiff's motion. Defendant appeals.

The sole issue before this Court is whether plaintiffs' claims for legal fees are "covered claims" pursuant to MCLA 500.7925; MSA 24.17925. We initially acknowledge this to be a case of first impression in Michigan.[3] To adequately discuss this issue, it is necessary to delve back into the legislative history of this statutory provision.

The original House Bill No. 3699, one of a number of proposed bills dealing with the establishment of some sort of insolvency fund, provided for the establishment of an insolvency pool which would have assumed all the obligations owed by an insurance company on the date of its insolvency—specifically including "legal expenses and claims".

After reviewing the various insolvency fund bills which were before the Legislature, the Insurance Bureau of this state drafted and submitted Substitute House Bill No. 3699 to the Legislature. That bill ultimately became the Guaranty Association Act and contained a number of changes from the original bill. The most notable from our standpoint

---

[3] While other states have struggled with the broad issue posed by this case, *see Kelly, Walker & Liles v McFarling,* 509 SW2d 659 (Tex, 1974), *Withers v Great American National Life Guardian,* 124 NJ Eq 4; 200 A 485 (1938), our sister jurisdictions have not undertaken the precise question facing us here. Lower courts in other jurisdictions which have analyzed our problem, *O'Connor v New Jersey Property, Liability Insurance Guaranty Association,* 17073/74 (New York County, NJ, 1975), *O'Malley v Florida Insurance Guaranty Association, Inc,* 71-502 Leon County Circuit Court (Fla, 1972), were not working with the same wording nor is there any indication of similar legislative histories.

was the omission of legal fees and expenses from the definition of "covered claim". We must decide its significance.

2A *Sutherland's Statutory Construction* § 48.18, p 224, notes that "[g]enerally, the rejection of an amendment indicates that the legislature does not intend the bill to include the provisions embodied in the rejected amendment". Indeed, the Michigan Supreme Court espoused a similar point of view in *People v Adamowski,* 340 Mich 422, 429; 65 NW2d 753 (1954):

"When the legislature affirmatively rejected the statutory language which would have supported the State's present view, it thereby made its intention crystal clear. We should not, without a clear and cogent reason to the contrary, give a statute a construction which the legislature itself plainly refused to give."

However, in this case, it can be argued that there is a "clear and cogent reason to the contrary". *Sutherland, supra,* at 224–225 explains:

"An amendment may have been adopted, however, only because it expressed better a provision already embodied in the original bill or because the provision in the original bill was deemed unnecessary because unwritten law would produce the same result without it." (Footnote omitted.)

If, as Judge Roumell found, the language "arising out of" is so clear that legal fees must be so included, the cautionary expression from *Sutherland* would be valid.

We are unable to resolve this controversy. We are not persuaded that the logic of either position so overwhelms the other that it should be adopted as definitive. We therefore look to the situation prevailing prior to the enactment of the Act be-

cause we find that, *as to this precise issue,* the Act made no change in prior law.[4] Under prior law, as a general rule, attorneys were treated as were any other creditor.

However, other provisions of the Act make it necessary to make a practical modification in our holding. We are unable to ascertain from the facts what fees plaintiffs are suing for. The Association is responsible for defending claims unsettled at the time of insolvency. As it admits that it pays for the cost of attorneys who defend insureds after insolvency, potentially a class of obligations exists which defies proper legal categorization. It is likely that not all of plaintiffs' obligations were neatly wrapped up prior to the insurers' insolvency. In those unfinished cases, the Association will have to hire some law firm to complete the work plaintiffs had already started. If a new law firm is hired, all of plaintiffs' work will be duplicated. The drivers of the state will save nothing. Thus, where plaintiff firms are hired by the Association to complete work already started, it is both senseless and needlessly punitive to deny them compensation for their earlier work product.

We reiterate, however, that plaintiffs are not entitled to any sums which represent legal work completed for the insolvent insurers prior to insolvency. They were not entitled to compensation before and we don't feel the Act confers that right upon them. It should be remembered that the Association is a quasi-trust on behalf of the gen-

---

[4] We are aware that the insolvent insurers' policies provided for legal representation. However, they also provided for insurance coverage, in the broader sense. We are not so naive to suggest that the logic that would allow for legal fees as part of that coverage magically excludes claims adjusters, investigators and other integral components of the claims settlement process. An informed judiciary will be wary of setting up attorneys as a privileged class, divorced from the risks endured by those unable to call themselves "professionals".

eral driving public. We believe that to tax every insured driver in this state for attorney fees should require a more definitive legislative enactment.

We therefore remand both cases to their respective trial courts for proceedings consistent with this opinion. No costs, a public question being involved.

V. J. BRENNAN, J., concurred.

D. C. RILEY, J. *(concurring in part; dissenting in part).* I concur with my colleagues to the extent Judge KAUFMAN's opinion interprets MCLA 500.7925; MSA 24.17925 as excluding attorney fees from the statutory definition of "[c]overed claims". Beyond that, I am troubled.

If "[a]n informed judiciary * * * [should] be wary of setting up attorneys as a privileged class, divorced from the risks endured by those unable to call themselves 'professionals' ", it would seem to follow from the majority opinion that "claims adjusters, investigators and other integral components of the claims settlement process" would likewise be entitled to remuneration for their work on "claims unsettled at the time of insolvency".

Whether the majority's decision is read narrowly to apply solely to attorneys or expansively to include others in the claims settlement process, I perceive no statutory authority for such judicial largesse. Thus, to the extent the majority's "practical modification" affords recovery for claims "not neatly wrapped up prior to the insurers' insolvency", I dissent.