ATTORNEY GENERAL *ex rel* INSURANCE COMMISSIONER v
MICHIGAN PROPERTY & CASUALTY GUARANTY ASSOCIATION

1. Insurance—Statutes—Liberal Construction.

Laws applicable to insurance are to be liberally construed in favor of policyholders, creditors and the public.

2. Statutes—Construction—Object—Harmonious Result.

A statutory provision is to be given a reasonable construction looking to its purpose and the object it seeks to accomplish, and should be considered with other sections appearing in the same act and interpreted so as to produce, with them, a total enactment that is harmonious and consistent.

3. Insurance—Property and Casualty Guaranty Association—
    Duty to Pay Claims—Insolvent Insurers—Statutes.

The Michigan Property and Casualty Guaranty Association has the duty to pay covered claims against an insolvent insurer incurred or existing prior to, on, or within 30 days after appointment of a receiver if the insolvent insurer had ever been authorized, after the inception of the act creating the association, to transact insurance business in Michigan (MCLA 500.7921[b], 500.7925[1] [iv]; MSA 24.17921[b], 24.17925[1] [iv]).

4. Insurance—Rights of Policyholder—Accrual of Rights—Insol-
    vent Insurers—Authority to Conduct Business.

The rights of an insurance policyholder and third party beneficiaries accrue at the time that the policy is purchased and their right to collect their claims against an insolvent insurer from the Michigan Property and Casualty Guaranty Association is not affected by the fact that the insurer's certificate of authority to conduct business had been revoked prior to the insurer's insolvency.

Appeal from Ingham, James T. Kallman, J.

References for Points in Headnotes

[1] 43 Am Jur 2d, Insurance §§ 260, 271–277.
[2] 43 Am Jur 2d, Insurance §§ 270, 276.
[3, 4] 43 Am Jur 2d, Insurance § 134.

Submitted October 4, 1977, at Lansing. (Docket No. 77-650.) Decided January 5, 1978.

Complaint by the Attorney General upon the relation of the Insurance Commissioner, ancillary receiver of several insolvent insurance companies, against the Michigan Property and Casualty Guaranty Association for a declaratory judgment that the association is responsible for payment and discharge of several claims against the insolvent insurers and to enjoin the association from denying payment and discharge of those claims. Summary judgment for plaintiff. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Harry G. Iwasko, Jr.,* and *Louis J. Porter,* Assistants Attorney General, for plaintiff.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Donald S. Young* and *Joseph C. Basta),* for defendant.

Before: D. C. RILEY, P. J., and J. H. GILLIS and R. M. MAHER, JJ.

PER CURIAM. Defendant Michigan Property and Casualty Guaranty Association (hereafter, "the Association") appeals an adverse summary judgment issued by the Ingham Circuit Court which held the Association liable for "covered claims" made against three "insolvent insurer[s]" (Consolidated Underwriters, Inc., St. Louis Fire and Marine Insurance Company and Medallion Insurance Company) under the property and casualty guaranty association act (hereafter, "the act"), MCLA 500.7901 *et seq.;* MSA 24.17901 *et seq.,* and which

permanently enjoined the Association from denying liability under the act.

In his complaint, the Attorney General, relying upon the act, charged the Association with liability for the payment of no less than 45 claims made by Michigan residents against three named "insolvent insurers". The complaint further alleged that the named insurers were member insurers at the time of the Association's inception and that the Michigan Insurance Commissioner had been appointed as the ancillary receiver for the surviving entities of the foregoing insurers in 1976.

Denying liability, the Association responded that the named insurers were neither "member insurers" nor "insolvent insurers" within the meaning of the act since they were not authorized to transact business in Michigan at the time the ancillary receiver had been appointed.

The record below (consisting of the pleadings, appendices and requests for admissions) reveals that the named insurers were once authorized to transact insurance business in Michigan; according to defendant, however, the Insurance Commissioner effectively terminated these certificates in the latter part of 1972. Hence, as noted, the surviving insurers did not possess subsisting certificates of authority upon the receiver's appointment in 1976.

Pointing to various sections of the act, to its legislative history and to other provisions of the Insurance Code, the Association maintains that it must pay only the covered claims of insolvent insurers who are member insurers, that is, insurers who are authorized insurers for which a receiver has been appointed.

As this Court recently noted in *Metry, Metry, Sanom & Ashare v Michigan Property & Casualty*

*Guaranty Association,* 79 Mich App 226, 227; 261 NW2d 267 (1977), the act is remedial legislation designed to protect Michigan "insureds and parties injured by insureds" against the "covered [but typically uncollectible] claims" of statutorily defined "insolvent insurers".

In pertinent part, the act provides:

"To implement the provisions of this chapter, there shall be maintained within this state, by all insurers authorized to transact in this state any of the kinds of insurance specified in section 7925, but including the accident fund created by section 701 of Act No. 317 of the Public Acts of 1969, being section 418.701 of the Compiled Laws of 1948, an association of such insurers to be known as the property and casualty guaranty association, hereafter referred to as the 'association'. Every such insurer shall be a member of the association, as a condition of its authority to continue to transact insurance in this state." MCLA 500.7911; MSA 24.17911.

"As used in this chapter:

"(a) 'Member insurer' means an insurer required to be a member of the association in accordance with the provisions of section 7911.

"(b) 'Insolvent insurer' means a member insurer for which a domiciliary or ancillary receiver has been appointed in this state after the effective date of this chapter." MCLA 500.7921; MSA 24.17921.

In addition, the act envisages the imposition of assessments against the Association's members "[t]o the extent necessary to secure funds for the association for payment of covered claims and also for payment of reasonable costs of administering the association".[1] MCLA 500.7941; MSA 24.17941.

---

[1] MCLA 500.7941; MSA 24.17941 further provides that such "assessments shall be recognized in the rate-making procedures for insurance rates in the same manner that expenses and premium taxes are recognized."

As polestars for our decision, we shall employ certain settled principles of statutory construction. In *Commissioner of Insurance v American Life Insurance Co,* 290 Mich 33, 43; 287 NW 368 (1939), the Supreme Court recognized that the insurance business is one affected with a public interest. For this reason, the Court said, laws applicable to insurance are to be "liberally construed in favor of policyholders, creditors and the public". It added:

"In *Attorney General, ex rel. Common Council of the City of Detroit, v. Marx,* 203 Mich. 331 [168 NW 1005 (1918)], we quoted the following from 2 Lewis' Sutherland Statutory Construction (2d Ed.), § 490:
" ' "Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injustice; to favor public convenience and to oppose all prejudice to public interests." '
"In *Sibley v. Smith* (syllabus), 2 Mich. 486 [(1853)], and again in *Detroit Common Council v. Engel,* 207 Mich 106 [173 NW 547 (1919)], we said:
" 'In construing statutes of doubtful meaning, courts are authorized to collect the intention of the legislature from the occasion and necessity of the law—from the mischief felt, and the objects and remedy in view—and the intention is to be taken, or presumed, according to what is consonant to reason and good discretion.' " *Id.* at 44–45.

Accord: *Dearborn National Insurance Co v Commissioner of Insurance,* 329 Mich 107; 44 NW2d 892 (1950), and *Attorney General, ex rel Commissioner of Insurance v Michigan Surety Co,* 364 Mich 299; 110 NW2d 677 (1961). See also *State Farm Mutual Automobile Insurance Co v Kurylowicz,* 67 Mich App 568, 578; 242 NW2d 530 (1976).

A statutory provision is to be given a reasonable construction looking to its purpose and the object

it seeks to accomplish. It is to be considered with other sections appearing in the same act and interpreted so as to produce, with them, a total enactment that is harmonious and consistent. *Royal Oak School District v Schulman,* 68 Mich App 589, 593; 243 NW2d 673 (1976), *Scholten v Rhoades,* 67 Mich App 736, 745-746; 242 NW2d 509 (1976). Further, as this Court noted in *Scholten:*

"[W]here a statutory provision is clear and unambiguous, it is the court's duty to enforce the provision as written. *Ypsilanti Police Officers Association v Eastern Michigan University,* 62 Mich App 87, 92-93; 233 NW2d 497 (1975). But a statute which is clear and unambiguous is nonetheless not to be given a construction which is absurd." *Id.* at 744-745.

In the present suit, defendant cites in support of its interpretation the Insurance Code's definition of " 'authorized' insurer", MCLA 500.108; MSA 24.1108, which, to be sure, requires possession of "a subsisting certificate of authority issued by the commissioner". Defendant also takes note of MCLA 500.7833; MSA 24.17833, a provision (enacted contemporaneously with the act) which requires an appointed receiver "for any authorized insurer" to give prompt "notice of his appointment and a brief description of the contents of the property and casualty guaranty association act, if applicable" to specified parties by first class mail. Lastly, defendant apprises us of the act's legislative history, namely, the rejection of original House Bill No. 3699 which would have required "[a]ll insurers licensed to write casualty, property and workmen's compensation insurance * * * [to] assume all of the obligations * * * of *any* casualty, property or workmen's compensation *insurer*

which has been declared insolvent * * * ". (Emphasis supplied.) Thus, the Association asserts, the more restrictive language of the act as ultimately promulgated, requiring the Association's payment solely of covered claims of insolvent, member insurers, evinces a legislative intent to satisfy the obligations of only those insolvent insurers which are authorized to transact business at the time of the receiver's appointment.

The Association neglects, however, to note the concluding phrase of the provision defining "insolvent insurer", and a pertinent portion of the definition of "covered claims":

"(b) 'Insolvent insurer' means a member insurer for which a domiciliary or ancillary receiver has been appointed in this state *after the effective date of this chapter."* MCLA 500.7921(b); MSA 24.17921(b). (Emphasis added.)

"(l) 'Covered claims' means obligations of an insolvent insurer which * * * (iv) were *incurred or existed prior to,* on, or within 30 days after *the date the receiver was appointed."* MCLA 500.7925(1)(iv); MSA 24.17925(1)(iv). (Emphasis added.)

Guided by our duty liberally to construe insurance laws "in favor of policyholders, creditors and the public", *Commissioner of Insurance v American Life Insurance Co, supra,* we read the last cited provisions, taken together, to suggest that the significant temporal reference, for purposes of the present issue, is the effective date of the act. In other words, if, after the act's inception, an insurer had ever been authorized to transact insurance business in Michigan and subsequently had a receiver appointed for it, the Association's duty to pay covered claims (incurred or existing prior to, on, or within 30 days after the receiver's appoint-

ment) is thus invoked. Hence, that such an insurer may have been stripped of its authority to transact business prior to the receiver's appointment is of no moment.[2]

As the Attorney General correctly notes, the Association's contention, if applied, would have an enervating effect on the act: It would place the Commissioner in the untenable position of refraining from the use of his power to revoke a certificate of authority, see MCLA 500.434; MSA 24.1434, repealed by 1972 PA 360 and replaced by an expanded section, MCLA 500.436; MSA 24.1436, for fear that such revocation would relieve the Association of its obligation to pay covered claims and would thereby relegate the act's intended beneficiaries to the status of general creditors of an insolvent insurer. Further, this enforced timidity on the part of the Commissioner would enhance the prospect that unsuspecting persons might purchase insurance from an authorized but financially troubled insurer, only to learn on the insurer's later insolvency that their claims, for all practical purposes, are uncollectible.

With regard to the act's legislative history, we have noted in another context that it does not readily disclose the reason inspiring the changes in wording from the predecessor version to the act as promulgated. See *Metry, supra,* at 231. While defendant characterizes the changes as supportive of its contention, we agree with the Attorney

---

[2] To the extent it is impossible to harmonize our interpretation of the act with the notice requirements of MCLA 500.7833; MSA 24.17833, we believe the more salutary course is to preserve the act's remedial design *(viz.,* protecting an insolvent insurer's policyholders and injured third-party claimants) and allow the instant decision to inform appointed receivers that the phrase "authorized insurer" in MCLA 500.7833; MSA 24.17833 comprehends, for purposes of the guaranty act, any member insurer which once had been authorized after the act's effective date.

General in reading the legislative changes as an attempt to exempt the Association from liability for claims of "surplus lines" insurers, that is, unauthorized, out-of-state insurers permitted to write policies for Michigan residents who are unable to obtain suitable coverage at reasonable rates from Michigan-authorized insurers. See MCLA 500.1840 *et seq.;* MSA 24.11840 *et seq.*

In our view, the argument advanced by the Attorney General is compelling:

"The * * * [Association] has attempted to create a third class of insurance company. That third class is a member insurer which has lost its certificate of authority at the time of the insolvency proceedings. Clearly, there is no excuse, other than saving money, for the insurance industry's attempt to evade indemnifying policyholders and third party beneficiaries of a member insurer which is without a certificate of authority at the time of insolvency. There is no rational reason for differentiating between member insurers on the basis of whether they possess a certificate of authority at the time of the insolvency proceedings. The only rational determination of member insurer status is at the time that the insurance policy was issued.

" * * * The Michigan citizens who purchased their policies from companies which were licensed at * * * [that] time * * * should not lose their right to collect from the fund due to the regulatory activity of the Insurance Commissioner * * * . The rights of the policyholder and third party beneficiaries accrue at the time that the policy is purchased and their right to collect their claims from the guaranty fund is not diminished by actions taken by others outside their immediate control.

"The interpretation proposed by the * * * [Association] benefits the * * * [Association] to the detriment of all policyholders in the State of Michigan, because they can never know that the fund will be liable to pay a claim on their behalf in the event their company becomes insolvent. There was no intention on the part of

the legislature to create this uncertainty. Instead, it was the intention of the legislature to remove for all time the risk of insolvency from the shoulders of the policyholders and third party beneficiaries. It is equally clear that the legislature did not set up three categories of insolvent insurers: members, surplus lines and members who no longer hold certificates. The legislature intended to create but two categories: member insurers and surplus lines companies that were not licensed to do business in Michigan at the time that the obligation to the policyholders and third party beneficiaries accrued."

Accordingly, the lower court is affirmed.

No costs, a public question having been resolved.