ALLEN v MICHIGAN PROPERTY & CASUALTY GUARANTY
ASSOCIATION

Docket No. 65533. Submitted April 5, 1983, at Detroit.—Decided
September 28, 1983.

Mary L. Allen obtained a judgment against Dr. Harry M. Gallup
for negligent treatment of a foot ailment. Gallup was insured
by All-Star Insurance Company, a Wisconsin corporation which
had been ordered into liquidation prior to the time Allen
obtained her judgment against Gallup. All-Star was engaged in
the insurance business in Michigan only as a surplus lines
carrier. Allen, unable to satisfy her judgment, filed a claim for
payment with the Michigan Property and Casualty Guaranty
Association, which is required to pay certain obligations of
member insurers who have become insolvent. The association
denied Allen's claim, and Allen filed suit against the associa-
tion in Wayne Circuit Court, alleging that payment was due
under the Property and Casualty Guaranty Association Act.
The trial court, Harry J. Dingeman, Jr., J., granted defendant's
motion for summary judgment, finding that defendant was not
liable to plaintiff under the act because All-Star was not an
insolvent insurer and the claim was not a covered claim within
the meaning of the act. Plaintiff appealed. *Held:*

Defendant would be required to pay plaintiff's unsatisfied
judgment against All-Star's insured only if All-Star were an
insolvent insurer within the meaning of the act. In order to be
an insolvent insurer within the meaning of the act, All-Star
would have had to have been an insurer which was required to
be a member of the association. All insurers authorized to
transact insurance in this state are subject to the act. Surplus
lines carriers, however, have never been considered authorized
insurers and, therefore, claims against them have never been

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 43 Am Jur 2d, Insurance §§ 18, 19.
  73 Am Jur 2d, Statutes § 281.
[3, 5] 43 Am Jur 2d, Insurance §§ 103-106.
[4, 5] 43 Am Jur 2d, Insurance § 50.
  Public regulation or control of insurance agents or brokers. 10
  ALR2d 950.

covered claims under the act. Summary judgment was properly granted in favor of defendant.

Affirmed.

1. INSURANCE — STATUTES — JUDICIAL CONSTRUCTION.

Laws applicable to insurance are to be liberally construed in favor of the policyholders, creditors and the general public.

2. INSURANCE — STATUTES — JUDICIAL CONSTRUCTION.

Statutes relative to insurance will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injustice, to favor public convenience and to oppose all prejudice to public interests.

3. INSURANCE — PROPERTY AND CASUALTY GUARANTY ASSOCIATION ACT.

The Property and Casualty Guaranty Association Act was designed to protect insureds and persons with claims against insureds from potentially catastrophic loss in the event the insurer becomes insolvent (MCL 500.7901 *et seq.;* MSA 24.17901 *et seq.).*

4. INSURANCE — SURPLUS LINES INSURERS.

Surplus lines insurers are insurance companies which are neither chartered nor licensed to sell insurance in the State of Michigan but which are permitted to write policies for Michigan residents who are unable to obtain suitable coverage at reasonable rates from Michigan-authorized insurers.

5. INSURANCE — SURPLUS LINES INSURERS — PROPERTY AND CASUALTY GUARANTY ASSOCIATION ACT.

Claims against a surplus lines insurer are not covered by the Property and Casualty Guaranty Association Act (MCL 500.7901 *et seq.;* MSA 24.17901 *et seq.).*

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C.* (by *David K. Barnes, Jr.),* for plaintiff.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Craig L. John* and *Mary Ellen Darin),* for defendant.

Before: WAHLS, P.J., and GRIBBS and M. WAR-SHAWSKY,* JJ.

PER CURIAM. Plaintiff appeals as of right from the trial court's June 17, 1982, order granting summary judgment in favor of defendant.

Plaintiff commenced a civil action against Dr. Harry M. Gallup, seeking damages for the alleged negligent treatment of her foot ailment. On June 28, 1979, plaintiff obtained a judgment against Dr. Gallup in the amount of $15,000, plus costs and interest. Dr. Gallup was insured by All-Star Insurance Company, a Wisconsin corporation which had been ordered into liquidation prior to the time plaintiff obtained her judgment against Dr. Gallup. All-Star was engaged in the insurance business in Michigan only as a surplus lines carrier.

Plaintiff, being unable to satisfy her judgment, filed a claim for payment with defendant Michigan Property and Casualty Guaranty Association. Under the Property and Casualty Guaranty Association Act (hereinafter, the act), MCL 500.7901 *et seq.;* MSA 24.17901 *et seq.,* defendant association is required to pay certain obligations of member insurers who have become insolvent. Defendant denied plaintiff's claim. Plaintiff then commenced this action alleging that payment was due under the act. Defendant filed a motion for summary judgment under GCR 1963, 117.2, subds (1) and (3), alleging that defendant was not liable to plaintiff under the act because All-Star was not an "insolvent insurer" and the claim was not a "covered claim" within the meaning of the act. The trial

---

* Circuit judge, sitting on the Court of Appeals by assignment.

court granted the motion and summary judgment was entered.[1]

In interpreting the act, we employ certain well-established principles of statutory construction governing insurance laws. Since the insurance business is one affected with a public interest, laws applicable to insurance are to be liberally construed in favor of the policyholders, creditors and the general public. Statutes relative to insurance will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injustice, to favor public convenience and to oppose all prejudice to public interests. The statute is to be given a reasonable construction looking to its purpose and the object it seeks to accomplish. *Attorney General ex rel Ins Comm'r v Michigan Property & Casualty Guaranty Ass'n,* 80 Mich App 653, 657-658; 263 NW2d 918 (1978); *Dearborn National Ins Co v Comm'r of Ins,* 329 Mich 107; 44 NW2d 892 (1950); *Comm'r of Ins v American Life Ins Co,* 290 Mich 33; 287 NW 368 (1939).

The act was designed to protect insureds and persons with claims against insureds from potentially catastrophic loss in the event the insurer becomes insolvent. Such persons have a right to rely on the existence of an insurance policy and are not likely to be in a position to evaluate the financial stability of the insurance company and have no control over the time at which their claims against the company may arise. *Metry, Metry, Sanom & Ashare v Michigan Property & Casualty Guaranty Ass'n,* 403 Mich 117, 121; 267 NW2d 695 (1978).

---

[1] Plaintiff brought suit individually and on behalf of Michigan residents who were judgment creditors of or claimants against All-Star. Since the trial court granted defendant's motion for summary judgment, it did not rule on plaintiff's motion to proceed on a class action basis.

The parties agree that plaintiff's claim arose prior to the 1980 amendments to the act and that the case is governed by the statutory provisions in existence prior to 1980.[2]

The association created under the act is comprised of

"all insurers *authorized to transact in this state* any of the kinds of insurance specified in section 7925 * * *. Every such insurer shall be a member of the association, as a condition of its authority to continue to transact insurance in this state." 1972 PA 207, § 7911. (Emphasis added.)

An authorized insurer is one that possesses a subsisting certificate of authority issued by the Commissioner of Insurance. MCL 500.108(1); MSA 24.1108(1).

The association is required to pay and discharge covered claims under § 7931. The term "covered claims" is defined in § 7925:

"(1) 'Covered claims' means obligations of an *insolvent insurer* which: (i) arise out of the insurance policy contracts of the insolvent insurer issued to residents of this state or are payable to residents of this state on behalf of insureds of the insolvent insurer, (ii) were unpaid by the insolvent insurer, (iii) are presented as a claim to the receiver in this state or the association on or before the last date fixed for the filing of claims in the domiciliary delinquency proceedings, (iv) were incurred or existed prior to, on, or within 30 days after the date the receiver was appointed, and (v) arise out of policy contracts of the insolvent insurer issued for all

[2] The act was created by 1969 PA 277, effective August 11, 1969, and was amended by 1972 PA 207, effective June 30, 1972; 1980 PA 41, effective March 17, 1980; and 1982 PA 501, 502, effective December 31, 1982. The present case is controlled by the act as amended by 1972 PA 207.

kinds of insurance except life and disability insurance." 1972 PA 207, § 7925. (Emphasis added.)

The terms "insolvent insurer" and "member insurer" are defined in § 7921:

" 'Insolvent insurer' means a member insurer for which a domiciliary or ancillary receiver has been appointed in this state after the effective date of this chapter." 1969 PA 277, § 7921(b).
" 'Member insurer' means an insurer required to be a member of the association in accordance with the provisions of section 7911." 1969 PA 277, § 7921(a).

Accordingly, defendant association was required to pay plaintiff's unsatisfied judgment against All-Star's insured only if All-Star was an insolvent insurer within the meaning of the act. In order to be an insolvent insurer, All-Star must have been an insurer who was required to be a member of the association under § 7911. Under § 7911, the critical question is whether All-Star was an insurer authorized to transact insurance in this state. Plaintiff contends that since All-Star was permitted to transact insurance in this state it was authorized within the meaning of § 7911. We do not agree.

As noted previously, All-Star was a surplus lines insurance carrier.[3] In *Attorney General, supra,* p 661, the Court defined surplus lines insurers as:

"[U]nauthorized, out-of-state insurers permitted to write policies for Michigan residents who are unable to obtain suitable coverage at reasonable rates from Michigan-authorized insurers. See MCL 500.1840 *et seq.;* MSA 24.11840 *et seq."*

---

[3] Section 7911(2), as amended by 1980 PA 41 and 1982 PA 502, expressly states that surplus lines carriers are not authorized to transact insurance for purposes of the act.

A more thorough explanation is provided in OAG, 1979-1980, No 5612, pp 510-511 (December 20, 1979):

> *"Surplus lines carriers are insurance companies which are neither chartered nor licensed to sell insurance in the State of Michigan.* The purpose of such carriers has been expressed as follows:
>
> " '* * * Historically, the function of surplus lines insurance was to provide lines of insurance that were in excess of the lines, or amounts of a particular line, which could be absorbed by the insurance companies admitted to do business within. a state. *Today it has come to mean any insurance placed with insurance companies not admitted to do business in a particular state.* Non-admitted insurers provide valuable services in addition to their historic function. First, non-admitted insurers are often responsible for the introduction of wholly new lines of insurance coverage in areas in which admitted companies have shown little interest. Moreover, they can write insurance risk by risk, whereas their admitted counterparts, because of the restrictions imposed by state regulation and the belief that actuarial tables based on extensive sampling are necessary, are confined to writing only class insurance. The ability to so individualize insurance coverage enables such insurers, through the use of non-standard forms, to tailor their policies to the exact needs of the insured, and also to perform a valuable service in writing deductibles. Finally, the existence of surplus lines insurers provides an escape from the rigid rate and form regulations imposed by states on admitted insurers * * *.'
>
> *     *     *
>
> *"Surplus lines carriers are permitted to do business in Michigan without being licensed and without being required to meet the prerequisites of licensure,* such as maintaining minimum capital, surplus, and reserves. The activity is permitted by the legislature not for the benefit of the carriers involved, but for the protection of the citizens of the state on the theory that such insur-

ance, however unreliable, may be better than no insurance." (Footnote omitted; emphasis added.)

Surplus lines carriers may conduct business in Michigan only under limited and restricted conditions. Prior to enactment of 1980 PA 341, § 2, effective June 23, 1981, surplus lines carriers were regulated under §§ 1840 to 1864 of Chapter 18 of the 1956 Insurance Code, which regulated unauthorized insurers.[4] MCL 500.1840-500.1864; MSA 24.11840-24.11864). An examination of the statutes governing surplus lines carriers clearly indicates that such carriers are not authorized to transact insurance in Michigan.

In addition, the affidavit of Harold Leeman, acting director of the Insurer Licensing Division of the Michigan Insurance Bureau, submitted in support of defendant's motion for summary judgment, states that All-Star was permitted to transact insurance in Michigan only as a surplus lines carrier, and that the company has never been issued a certificate of authority, which is required before an insurance company is deemed to be authorized. MCL 500.108; MSA 24.1108. Plaintiff has not contested the averments in this affidavit.

This Court's conclusion that All-Star was not an authorized insurer within the meaning of § 7911 and was therefore not a member insurer or insolvent insurer under the act is supported by language in *Attorney General, supra.* Although that case did not involve a surplus lines carrier, the Court accepted the Attorney General's argument that the Legislature intended to create two categories under the act: member insurers and surplus

---

[4] Chapter 18 of the Insurance Code was repealed by 1980 PA 341 and superseded by Chapter 19. Surplus lines carriers are now regulated under Chapter 19 of the Insurance Code, MCL 500.1901 *et seq.;* MSA 24.11901 *et seq.*

lines companies which are not licensed or autho-
rized to do business in Michigan.

Plaintiff argues that the Legislature would not
have amended the statute to exclude surplus lines
carriers unless such carriers had previously been
considered member insurers. MCL 500.7911(2);
MSA 24.17911(2). See fn 3 *supra*. This argument is
not persuasive. We believe the 1980 amendment
was intended merely to clarify the language of the
act. We find that surplus lines carriers have never
been considered authorized insurers and, there-
fore, claims against them have never been covered
claims under the act. Summary judgment was
properly granted in favor of defendant.

Affirmed.